LEWIS, executor, *v.* SMITH *et al.*, executors.

1. Though clerks of the superior court have, under section 268, par. 2, of the code, express authority "to receive the amounts of all costs due in the court of which they are clerks," they are not officers authorized by law "to execute and return" executions; and consequently, a mere entry by a clerk upon an execution, acknowledging that he had received the costs due thereon, will not suffice to relieve from dormancy the judgment upon which the execution is based.

2. This case differs from that of *Gholston* v. *O'Kelley*, 81 *Ga.* 19, in which it was held that where a receipt for costs was entered upon an execution by a justice of the peace, the date of such receipt would constitute a new point from which the statute as to dormancy would begin to run. A justice of the peace is a collecting officer liable to rule as such; and while a clerk would be subject to rule for non-payment of costs actually collected by him, he could not be ruled for a failure to collect. The doctrine of the *Gholston* case, as to this point, should not be extended.

3. A judgment cannot be saved from dormancy by making upon the execution a *nunc pro tunc* entry of a levy alleged to have been made at a time when the judgment was not dormant.

4. The mere fact that a defendant in execution made partial payments of the judgment debt to the plaintiff in execution, and took receipts therefor from the latter, which were not entered upon the execution, did not suspend the running of the statute as to dormancy; nor is the running of this statute affected by the death of a defendant in execution.

November 30, 1896. Argued at the last term.

Affidavit of illegality. Before Judge Hart. Jasper superior court. September term, 1895.

*J. C. Key* and *J. W. Preston*, for plaintiff.
*F. Jordan*, for defendants.

LUMPKIN, Justice.

This case turned upon the question whether or not an execution issued from a superior court was dormant. In our opinion, the trial judge correctly held that it was so.

1, 2. Among other things, it was claimed that the execution was saved from dormancy by an entry thereon made by the clerk of the superior court, acknowledging the receipt of the clerk's and sheriff's costs. If this entry could properly be treated as one made by an officer authorized by law to "execute and return" the process, the execution would not be dormant. We do not think, however, clerks of the superior courts are such officers. Although, under section 268, par. 2, of the code, they have authority to "receive the amounts of all costs due in the court of which they are clerks," they are not collecting officers. They have no authority to levy executions, and we know of no statute requiring any "actings and doings" on their part with reference to the enforcement of this form of process, or imposing upon them any duty as to making "returns" concerning the same. If a party voluntarily pays to the clerk the costs due upon an execution, he may lawfully receive the money, and there is no impropriety in his entering the fact of such payment upon the execution; but still, his entry cannot properly be regarded as that of an officer like the sheriff, who is specially charged with the duty of executing and returning the process.

This court, in the case of *Gholston* v. *O'Kelley*, 81 Ga. 19, held that a receipt for costs entered upon an execution by a justice of the peace was such an entry as would constitute a new point from which the dormancy statute would begin to run, but that ruling was put expressly upon the

ground that a justice of the peace was, by law, made a collecting officer, and liable to rule for a failure to collect. This is not true as to clerks of the superior court. While they might be ruled with reference to costs ·actually collected by them, they could not be ruled for a mere failure to collect. We think the *Gholston* case goes far enough in the direction indicated, and are not inclined to further extend its application.

. 3. Another effort was made to save from dormancy the execution with which we are now dealing, by endeavoring to obtain an order authorizing and directing a sheriff, who had gone out of office, to make upon the execution a *nunc pro tunc* entry of a levy alleged to have been made by him at a time when he was in office, and when the judgment was not dormant. The trial court was of the opinion that, conceding the facts to be as stated, an entry of this kind would not accomplish the desired end. This was unquestionably the correct view to take of the matter. *Nunc pro tunc* entries upon executions doubtless may, for a proper purpose, oftentimes be made; but they would be entirely unavailing as a means of saving from dormancy an execution which had already lost its lien. Such entries only as are actually made—not such as might, or ought to, have been made—will save an execution from dormancy. As to this the language of our statute is plain and unequivocal. By its express terms, the execution becomes dormant if "seven years have expired from the time of the last entry upon the execution, made by an officer authorized to execute and return the same." Omission to make proper entries, within the time prescribed by law, is precisely what renders an execution dormant. After the time limited has wholly expired, the plaintiff in execution cannot, by entries *nunc pro tunc*, or otherwise, defeat the operation of the statute.

4. The mere making of partial payments on the judgment debt to the plaintiff in execution, and taking receipts

for the same written on separate pieces of paper, with no corresponding entry on the execution, cannot, of course, suspend the running of the statute. Nor can the death of a defendant in execution affect the question of dormancy. Notwithstanding such death, the execution may be levied upon any property belonging to the estate of the deceased, whether there has, or has not, been administration thereon. Or, if the deceased leaves no visible assets, the execution can be kept alive by proper and timely entries *nulla bona.*

*Judgment affirmed.*