VILBIG CONST. CO. et al.
v. WHITHAM.

No. 32055.   Dec. 14, 1948.

Rehearing Denied Jan. 8, 1949.

*201 P. 2d 922.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, and Worsham, Harrell, Burrow & Worsham, of Dallas, Tex., for plaintiffs in error.

Bullington, Humphrey & Humphrey and Milburn E. Nutt, all of Wichita Falls, Tex., and Cecil R. Chamberlin and W. G. Roe, both of Frederick, for defendant in error.

PER CURIAM. This action w a s brought by L. E. Whitham against Vilbig Construction Company, a corporation, and J. Lee & E. A. Vilbig, Inc., a corporation, for an accounting and the appointment of a receiver in connection with and arising out of the paving of Tillman Air Field near Frederick, Okla. At the beginning of the action the trial court appointed a receiver, and its action was by the defendants appealed to this court, which, in an opinion reported in 194 Okla. 460, 152 P. 2d 916, sustained the action of the trial court. The essential facts are stated in that opinion, and will not be restated here.

After the appointment of the receiver had been sustained by this court, defendants filed their answer and cross-petition, and when the case came on for trial demanded a jury trial. The trial court denied a trial by jury, holding that the case was an accounting in equity; took an account between the parties; made very complete findings of fact, and rendered judgment for plaintiff. The trial court decreed that to the sum of $154,948.90, claimed by defendants to be the net profits arising from the paving operation aforesaid, there should be added the additional amount of $67,929.73, making a total profit of $222,878.63; that under the contract between the parties defendants were entitled to the sum of $93,-467.35, and that the remainder, in the sum of $129,411.28 belonged to plaintiff, and decreed the payment of such amount to him. From this judgment defendants appeal, and plaintiff cross-appeals as to certain items. These contentions will be disposed of together.

Defendants make three contentions going to the entire controversy, which may properly be disposed of before

taking up the accounting feature of the case. The first of these general propositions is that the action is an action at law for damages, and that the trial court erred in refusing the defendants a jury trial and in treating the case as an accounting in equity. In connection with this contention they assert that the arrangement between the parties was not a joint venture, but that plaintiff was a superintendent for the defendants.

In Vilbig Construction Co. v. Whitham, supra, we held that under the contract between plaintiff and defendants the relationship between them was that of joint adventurers; that the relation was fiduciary in character and required the utmost good faith on the part of both parties, and that the rights and liabilities as between them were similar to those of partners. The defendants admittedly were dirt grading contractors, having little or no experience in the laying of concrete pavement, and as such had a contract with the government for doing the dirt grading at the Tillman Air Field, which was preliminary to the laying of the pavement. The action by plaintiff was predicated upon the theory that after his discharge by defendants, the defendants charged against the paving operation numerous expenses which should have been borne by them under the grading contract, and that in constructing the pavement they incurred a great amount of unnecessary expense. He further charged that the action of defendants in discharging plaintiff was for the fraudulent purpose of reducing the net profit to be derived from the paving operation so as to prevent a reduction of their profits if the contract was renegotiated by the government, in which event, under the contract between the plaintiff and defendants, defendants would have borne a portion of any resulting loss. The complexity of the accounts and the number of items involved in the contentions of the parties, coupled with the fiduciary relationship which existed between them, was, in our judgment, sufficient to jus-

tify the holding of the trial court that the action was equitable and that it would be impracticable if not impossible to try the cause to a jury. Also, it appears that a considerable part of the evidence required by plaintiff to establish his contentions was in the hands of defendants.

In 1 C. J. 613 and in 1 C. J. S. 645, the essentials of equitable jurisdiction in an action on account are said to be the need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation. All three of these essentials inhered in the instant case. The trial court did not err in treating the matter as equitable and refusing the defendants' request for a jury trial. Templeman v. Walker, 175 Okla. 366, 52 P. 2d 737.

Defendants next contend that the trial court erred in overruling their demurrer and in not dismissing plaintiff's complaint for the reason that it did not allege a previous demand for an accounting and a refusal thereof by defendants, citing in support of this contention Wiegardt v. Becken, 10 Wash. 2d 182, 118 P. 2d 182, 143 A. L. R. 1208.

It appears that the action was brought pending a renegotiation of the contract between defendants and the United States Government, so that at the time of the bringing of the action a demand, if made, could not have been complied with. It further appears that the accounts were very complicated and that the items thereof were bitterly disputed by the parties, and that if a demand had been made by plaintiff there could have been no satisfactory adjustment of the accounts between them. Under these circumstances we think the trial court correctly held that the express allegation of a demand and refusal in the petition was not necessary. 1 C. J. 627; 1 C. J. S. 660, §28.

Defendants next contend that the trial court erred in refusing to cancel the contract between them and plaintiff, which relief they sought in their answer

and cross-petition, and assert that the evidence adduced clearly shows that such relief should have been granted to them.

In this connection they point out that under their contract plaintiff agreed to furnish all the equipment and experienced personnel necessary for the completion of the joint venture, and to give the project proper supervision. They assert that he wholly failed to do these things, and that they had the right, under said contract, to take active charge of the supervision and control of the work and the men, materials, tools and equipment furnished by plaintiff, in the event plaintiff should for any reason refuse, neglect or fail to efficiently prosecute the work to completion.

The evidence shows that immediately upon the execution by plaintiff of the contract between plaintiff and defendants, plaintiff went to Frederick and began the preparatory work necessary to the performance of the contract before the actual laying of the pavement could be commenced; that before he signed the contract he had discussed with J. Lee Vilbig, vice president of the Vilbig Construction Company, and president of J. Lee & E. A. Vilbig, Inc., the amount of equipment necessary, including that owned by him which he could place upon the job, and that which could be obtained by renting the same from the government or procuring it from dealers by purchase agreements; that they had also discussed the question of where gravel, sand and stone could be procured, and had agreed that plaintiff and one Theo. Montgomery, with whom plaintiff was associated, should establish a plant for the production of sand and gravel at a point near the Air Field, and that plaintiff should erect a crusher to prepare such gravel for use; that they had also agreed that a railroad spur should be constructed for the unloading of stone and other material and equipment which might be shipped to the job and had, in fact, agreed upon all the preliminary work to be done in order to

be ready to do the actual laying of the pavement. The job was a large one, requiring the laying of some 712,000 square yards of pavement, and included runways, taxiways and a large apron, and the preliminary work to be done was necessarily extensive. The evidence further shows that the plaintiff proceeded with this work with reasonable diligence, and started the actual paving on October 7, 1942.

Defendant produced various witnesses, including Captain Huffman, the Army engineer in charge of the work, who testified that work could have been sooner commenced on the actual paving had plaintiff been ready, but there is no evidence in the record tending to prove that plaintiff did not diligently proceed with these preliminary arrangements, and plaintiff introduced in evidence a letter to defendants, signed by Captain Huffman and accepted by defendants, stating that due to inability to obtain rails for the unloading spur it was impossible to start the paving operations until October 7, 1942, for which reason the contract had been delayed 73 days, and that the date of completion would be by the government extended 75 days because of such fact.

The evidence further shows that while a number of these same witnesses testified that the defendants, under their grading contract, could have made ready a place at which paving operations could have started long before plaintiff started the same, no such place had in fact been prepared, that at a conference held on October 2, 1942, plaintiff complained that he was ready to begin but that the defendants had not properly prepared the grade on the particular runway where plaintiff was required to start paving operations; that defendants, working under the grading contract, spent some two additional days in bringing the grade down to the agreed or required tolerance, which was one-tenth of one foot, either above or below the paving grade, as established by the engineers, and that

when plaintiff thereafter began to lay his forms and do the fine grading for the first pavement to be put down he was compelled to start some 4,500 feet from the end of the runway because neither end of the runway was ready.

The evidence further shows that at a conference held on October 16th, between J. Lee Vilbig, Theo. Montgomery, and plaintiff, at which a contract for the production of gravel between Montgomery and defendant was finally entered into, J. Lee Vilbig was apparently satisfied with the progress made by plaintiff, and at that time delivered to plaintiff his copy of the contract between plaintiff and defendants, duly executed by defendants; that the paving was started by plaintiff on October 7, 1942, and proceeded until October 14, 1942, and that from October 14th to October 22nd further paving operations were prevented by rain; that up to that time plaintiff had used only one paving machine, although he had two others ready for use, and that between the 14th and 21st of October, on which latter date plaintiff was by the defendants relieved from further supervision over the work, there had been nothing to indicate that defendants were not satisfied with plaintiff's performance of his contract. There is also evidence that plaintiff had additional equipment which he could place upon the job if necessary, and additional personnel to man such equipment, and there is testimony that the equipment placed upon the job by him was amply sufficient to do the work, although due to the delay arising from the inability to sooner obtain rails for the railway spur he could not have completed the contract by the completion date originally set, which was December 1, 1942. Although some of the witnesses testified that in certain respects his equipment was inadequate to do the job, there is no showing that if he had not been summarily discharged by defendants he would not or could not have furnished the additional equipment necessary. From all the evidence it appears that he was an experienced

paving contractor, had previously participated in large paving jobs at various airfields in Texas, and his ability and experience is not questioned by any witness. There was some evidence introduced tending to show that there were other railroad spurs in the vicinity of the airfield which plaintiff might have used to start his paving operations sooner, but from the evidence it appears that these would not give him access to his crushing and loading plant that the spur he was constructing would give him, and, as stated above, the construction of that spur had been agreed upon by the parties and was apparently satisfactory to defendants. The contention of defendants that the equipment furnished by plaintiff was worn out and obsolete is not sustained by the weight of the evidence. Their further contention that the Army Engineers were highly dissatisfied with plaintiff's progress and that they were afraid their paving contract would be canceled by the government is contradicted by the fact that in December, after defendants had taken over this work, Captain Huffman, the Army Engineer in charge, suggested to plaintiff that he would approve plaintiff's making a subcontract with defendants and completing the work as such subcontractor. Captain Huffman also testified that after the conference of October 2nd, in reference to the bringing of the grade to the required tolerance for fine grading, there was friction and lack of harmony between the grading contractors and the paving operators.

Whether plaintiff's discharge was due, as claimed by him, to a desire of defendants to prevent the loss of a portion of their profits if the contracts were renegotiated, or was due to plaintiff's insistence that the grade be brought to the required one-tenth of one foot above or below the actual paving grade, or to some other motive not apparent from the record, it is clear that nothing which justified such action occurred, so far as the record shows, between October 16th, when defendants, apparently satisfied with the work, de-

livered to plaintiff his executed copy of the contract, and October 21st, when he was discharged.

The record is wholly devoid of any substantial evidence tending to prove that, had plaintiff been allowed to retain supervision and control of the work, it would not have been completed with reasonable rapidity, and within the time as extended. The record in this case is very voluminous, and has been carefully examined, and from such examination we are convinced that the holding of the trial court that there was no sufficient cause to justify the discharge of plaintiff is not clearly against the weight of the evidence.

Nor, as contended by defendants, did the finding of the trial court that the plaintiff's discharge was not due to a fraudulent design on the part of defendants to waste the profits of the joint enterprise, in order to prevent reduction of their profit if the contract was renegotiated, necessitate the rendition of judgment against the plaintiff by the trial court. While the court found that the discharge of plaintiff was not due to such fraudulent design upon the part of the defendants, it found that plaintiff's discharge was, in fact, unjustified, and permitted plaintiff to introduce his evidence tending to show that after his removal the paving project had been mismanaged, and that by reason thereof he had lost a substantial portion of the profits which would have accrued to the joint enterprise had the same been properly supervised. Such mismanagement and the resultant loss of profits having been charged by plaintiff, and the court having found his discharge unjustified, the court properly permitted him to make proof to substantiate his allegations, in order to arrive at a correct accounting and disposition of profits as between the parties. The trial court did not err in this respect.

We come now to the accounting feature of the case. Plaintiff made 16 specific claims, each claim relating to charges improperly made by the defendants against the funds of the joint venture, or for material and equipment paid for in whole or in part by the funds of the joint venture and taken by the defendants when the paving project was completed. Under the contract between plaintiff and defendants, defendants were to receive the first 13c per square yard of pavement laid after the costs and expenses of the paving project had been paid from the sum received from the government. After the payment of that 13c per square yard, which the court found amounted to $93,467.35, plaintiff was to receive any profits remaining. Out of his profits, plaintiff, by an agreement between him and Theo. Montgomery, had agreed that Montgomery should receive the next 12c per square yard to reimburse him for the expenses of equipping and producing the gravel plant. With this agreement defendants were not concerned, and as between defendants and plaintiff, plaintiff was entitled to all net profit over and above the sum of $93,467.35. Defendants admitted that they received the profits from the joint enterprise amounting to the sum of $154,948.90. It is therefore obvious that the amount of any of the claims made by plaintiff, which were sustained or allowed by the trial court, would be added to the amount plaintiff was entitled to receive out of the profits of the joint venture, subject, of course, to his payment to Montgomery, since any money of the joint venture improperly expended by defendants, or any equipment taken by them which had been paid for out of the funds of the joint venture, would be a part of that portion of the profits to which plaintiff was entitled.

Claim No. 1 was for alleged excessive demurrage incurred on shipment of stone and cement. The total demurrage which accrued over the several months of the work was $5,850.30. And some part of the demurrage was incurred while plaintiff was in charge of the work and the balance after defendants took over. The trial court found that such demurrage was excessive to

the extent of one-half thereof, or $2,-925.15, and rendered judgment f o r plaintiff for that amount.

It is not disputed that the demurrage was actually incurred and was paid. There is no evidence that any part of the demurrage accrued on account of any specific mismanagement on the part of the defendants. The nature of the work and the required speed in construction required that there be on hand at all times an unfailing supply of materials. The record discloses the defendants went forward with the construction work in all good faith and their actions in handling the stone and concrete was reasonably prudent. We are convinced that the findings of the trial court in reference to this item are clearly against the weight of the evidence and that plaintiff's claim No. 1 should have been denied in full. The trial court judgment is therefore reversed as to this item and judgment rendered for defendant.

Claim No. 2 was for an excessive price paid for stone by defendants and was rejected by the court, correctly, we think, because of the insufficiency of the evidence to show that an adequate supply of stone could have been obtained by defendants at a lesser price.

Claim No. 3 was for equipment rented by defendants in completing the paving after plaintiff had been discharged. The court sustained this claim as to some of the items and denied it as to the others. The evidence as to its use was very conflicting, but tended to show that some of the equipment so rented was really employed on the grading contract, or under both contracts to bring the grade from above the agreed tolerance of one-tenth of one foot down to the established paving grade in one operation. This is to some extent disclosed by the testimony of defendants' witnesses, and plaintiff's witnesses testified positively that it was not used in the so-called fine grading after the grade had been brought by defendants to the required toler-

ance. Other equipment was shown to be unnecessary.

Claim No. 4 was for excessive rentals on equipment needlessly retained by the defendants after the completion of the pavement. This claim was rejected by the court for the reason that prior to the completion of the work, the parties were involved in this litigation; that various restraining orders had issued, and that defendants were in the position of not knowing what they could or could not do in the way of removing the machinery.

Claim No. 5 was for profit made by defendants out of a separate paving job referred to as a "gas apron." Essential facts as to this item are as follows: Long after Whitham and Vilbig had started paving the airfield, the United States Government entered into a contract with the Kelly Construction Company for certain extensive concrete paving around the gasoline storage tanks. That was not a part of the airfield property, but was adjacent thereto but separate therefrom as above stated. Neither plaintiff nor defendants had any interest in or connection with the Kelly Construction Company. After taking over from Whitham the paving of the airfield, Vilbig obtained a subcontract from the Kelly Construction Company and paved the "gas apron" at the original price contract to the Kelly Company. On this s i d e job Vilbig made a profit of $4,399.01. Vilbig paid all the expense of the gas apron job, no part of it being charged to the costs of paving the airfield. The trial court found in favor of plaintiff on this item and rendered judgment for plaintiff in said sum of $4,399.01. We are convinced that the trial court finding and judgment as to this item is clearly against the weight of the evidence. The gas apron job was never contemplated as a part of the Whitham-Vilbig job of paving the airfield, and was in no sense a part of the airfield jobs and never in any sense became a part thereof. It was entirely separate and apart. There was noth-

ing in the relationship between Vilbig and Whitham which prevented either party from contracting other and separate jobs, and the record discloses that during the overall period of the construction of the airfield paving both Vilbig and Whitham contracted other separate jobs. This gas apron paving job was the separate venture of Vilbig and he was entitled to the profit thereon. We find the trial court judgment should be reversed as to this item and judgment rendered thereon for defendants.

Claim No. 6 was for rent and repairs on Ford trucks furnished by defendants, and was rejected by the trial court. The evidence on this claim was highly conflicting and the court found that while said trucks were in bad condition, they were at the time badly needed, and that the evidence failed to show definitely the amount of repair work done.

Claim No. 7 was for alleged excessive charges for road gravel furnished by defendants and used on the paving job during the month of January. Winter weather had so disturbed certain travelways and parking places f o r h e a v y trucks and machinery as to m a k e it immediately necessary to spread gravel in order that the mobile equipment could move and the paving work go forward. The gravel was obtained by defendants and transported a substantial distance and spread over the extensive surface necessary for the above-stated reasons. T h e evidence seems clear that the gravel was actually hauled and spread and used as above stated. There appears no substantial question as to the quantity of gravel so used. The trial court found that the gravel was so used, but that the cost thereof was excessive in the sum of $7,171.20. Upon a review of the record we find the exact details of the charges made for the gravel. We are convinced that the use of the gravel w a s reasonably prudent and necessary in the progress of the work and that the evidence of plaintiff is wholly insufficient to show that the charges made therefor were excessive. As to this item we find that the finding and judgment of the trial court was clearly against the weight of the evidence and that such judgment should be reversed and plaintiff's claim thereon be denied.

Claim No. 8 was for the value of tools, parts and supplies on hand at the completion of the work, which were taken by defendants and removed to their Dallas warehouse. While defendants at the trial stated that the parts were worthless, an inventory introduced in evidence by plaintiff showed their value as allowed by the court, and there was no substantial evidence to the contrary. This claim was properly sustained.

Claim No. 9 was referred to as equity in certain equipment purchased by Vilbig during the course of the construction work of this job. Essential facts are that certain equipment needed and necessary in the work of the paving job was acquired from the manufacturer thereof by Vilbig upon contract to make certain down payments and to make certain installment payments referred to as rent with provision that when the installments p a i d should equal the stipulated cost price, then such machinery should become t h e property of Vilbig. After Vilbig so acquired such items of equipment the same were rented to and used upon the paving construction job, and at the conclusion of the job Vilbig paid to the vendors the balance of the purchase price and retained the items of equipment. Whitham claimed that the difference between the balance payments made by Vilbig and the then value of the equipment was an equity which should go to him as in the nature of an additional profit of the paving job. We find, however, that as to this equipment the rental charge to the construction job was the same as rental charged on machinery rented from the United States Government and other various owners of equipment which was used in the paving job. It was Vilbig who acquired these items of equipment and he assumed the obligation of the

contract under which they were acquired as above stated. Plaintiff was not a party to the acquiring of these items of equipment and did not bear the burden of any of the obligation assumed in acquiring them. We are convinced that he never acquired any interest in these items of equipment any more than he acquired any interest in the many other items of equipment which were rented from the United States Government and various other parties. The trial court found in favor of plaintiff on this claim and allowed recovery thereon in the sum of $6,-442.29. We conclude that the finding and judgment of the trial court as to this item is clearly against the weight of the evidence and that such judgment should be reversed and this claim on the part of the plaintiff denied.

In connection with this same claim No. 9 the plaintiff by cross-appeal urges that the trial court should have allowed a larger sum on this claim, but since plaintiff is entitled to no recovery on this claim we will not further discuss the additional amount claimed.

Claim No. 10 was for a repair bill and rental charges paid by plaintiff to protect his equity in a piece of equipment rented on an option to purchase agreement, which was taken by defendants and returned to the seller. The plaintiff elected to exercise his option and paid the balance of the purchase price, plus a repair bill. The repairs were not shown to have been unnecessary. The court properly rejected this claim.

Claim No. 11 was a claim for liquor purchased by defendants and given to employees during their supervision of the work. This was charged against the joint account. The court properly sustained this claim as an unauthorized expenditure of the funds of the joint enterprise for a purpose not necessary to the prosecution of the work.

Claim No. 12 contained a large number of items alleged to have been erroneously charged to the cost of the paving job. In the course of the trial a certain portion thereof amounting to $2,055.89 was conceded by defendant as charged by error and the trial court rendered judgment for plaintiff on this claim in that amount. The trial court found that a large number of the items contained in claim No. 12 had theretofore been disposed of in claims Nos. 3 and 4, and that except as to the amount conceded by defendant, as above stated, the evidence of plaintiff failed to show any right of recovery on this claim. By cross-appeal the plaintiff contends that items amounting to the additional sum of several thousand dollars should be allowed on this claim. But from the record we are convinced that the plaintiff's evidence did not sustain such contention and that the findings and judgment of the trial court as to claim No. 12 is not clearly against the weight of the evidence and should be affirmed.

Claim No. 13 was certain salaries and expense paid to employees for a period of time after the actual job of paving was completed. The amount of this claim in the sum of $1,901.50 was allowed plaintiff by the trial court. Upon review of the record we find that the two employees named actually rendered the services for which they were paid the amount stated. It is shown that such services were necessary in winding up the affairs of the construction job. We are convinced that the use of such services was in good faith, for the benefit of the construction job and was a prudent and reasonable expenditure. We therefore find that the findings and judgment of the trial court in respect to claim No. 13 is clearly against the weight of the evidence and the judgment should be reversed and said claim denied.

Claim No. 14 was for interest paid by defendants for money borrowed in financing the paving job. It was necessary that large sums of money be borrowed throughout the course of the construction work and used to finance the work pending collections from the government. There is no dispute as to the actual amount of interest paid which

amounted to the sum of $2,335. While the original contract provided that the defendant should provide the financing of the job, the record indicates it was contemplated by the parties, Vilbig and Whitham, that the actual interest paid thereon should be charged as a part of the cost of the paving job. Among other things, correspondence between the parties while Whitham was in charge of the construction job indicates this to be true. There is nothing to indicate that Vilbig should be charged or was to be charged with the personal burden of paying all interest that might accrue on the large sums of money which all knew would be needed to finance this large undertaking. No one could have foretold with any certainty the length of time such interest might run nor even the approximate amount which would ultimately accrue. Upon review of the record we are convinced that the finding and judgment of the trial court allowing plaintiff a recovery on this claim in the above-stated amount is clearly against the weight of the evidence and must be reversed and that claim denied.

Claim No. 15 was a claim for freight on a certain piece of equipment erroneously shipped to this job after defendants had taken over its operation. The error was evidently due to a mistake by some employee and the trial court properly rejected the claim for this reason.

Claim No. 16 included the expense of an audit of the entire affairs of the construction project made by a certified public accountant at the instance of defendants for which they paid the sum of $478.02, and for the bond premium paid by the defendants to the bonding company when superseding order appointing receiver and for a stated amount of wages paid out. The trial court found in favor of plaintiff as to all this claim, except a freight item of $240.28, which the trial court found was without evidential support. Upon review of the record and observing the use of the audit made by the plaintiff and defendants and by the trial court,

we are convinced that the audit expense was a proper and legitimate item of expense and should not have been awarded the plaintiff as against the defendants. We find that the findings and judgment of the trial court as to claim No 16 is supported by the evidence as to the other items, but that as to the audit expense of $478.02, the finding and judgment of the trial court was clearly against the weight of the evidence, and that to the extent of such sum of $478.02, the judgment of the trial court on this claim must be reversed, and the judgment as to the balance of this claim affirmed.

The total amount of claims allowed by the trial court, and which it required to be added to the profits of the job admitted to have been received by defendants, totals the sum of $67,929.73. We have found as above stated that the trial court's judgment should be reversed in the aggregate amount of $25,652.17, leaving the amount of $42,277.56 in which the judgment of the trial court is affirmed.

We therefore conclude that the trial court's judgment should be affirmed in part and reversed in part as set out in detail in this opinion, and that in lieu of the trial court judgment, the last stated sum of $42,277.56 is the correct sum to be added to the admitted profit of $154,948.90 resulting in the total adjudicated profit of $197,226.46. And after substracting therefrom the sum of $93,467.35 accruing to defendants under the contract, that the remainder in the sum of $103,759.11 correctly belongs to plaintiff, for which last stated sum the plaintiff is entitled to judgment out of the profit fund remaining on hand from the paving construction job.

The cause is remanded to the trial court, with directions to vacate the judgment heretofore rendered, and to render judgment for plaintiff in the last stated sum.

On Rehearing.

PER CURIAM. In his petition for rehearing plaintiff calls attention to the

fact that the original opinion made no allowance of interest, a n d requests that the opinion be clarified to allow interest either from November 2, 1943, the date when the profits made by the joint enterprise were cleared of any claim by the United States Government, or from July 1, 1944, the date of the judgment in the trial court.

The suggestion that interest should be allowed from the date of the clearance of the profits is, in our judgment, not tenable for the reason stated in Harris v. W. R. Hart & Co., 195 Okla. 5, 154 P. 2d 759. In that case we said that interest could not be allowed upon the profits of a joint venture o v e r which there was a dispute between the parties until the question of what definite amount, if any, was due the plaintiff, was settled or finally adjudicated, for the reason that there was never a time at which the parties could have concluded or agreed that a definite amount was due. In the instant case it appears that the parties could not agree as to any division of the profits, and that such a division could not have been arrived at except through a judgment of a court having jurisdiction over the parties and the subject matter.

The contention that interest should at least be allowed from the date of the judgment of the trial court is also untenable, for the reason that in this case both parties filed motions for new trial, and both parties appealed from the judgment of the lower court. In Harden v. Harden, 191 Okla. 698, 130 P. 2d 311, we said:

"It is suggested that where both parties appeal from a judgment interest will not be allowed on the judgment, pending appeal, because both parties are responsible for delay in the payment thereof. This seems to be the rule where money judgments only are involved and there is no contract calling for interest. 33 C. J. 247."

As said in that case the question of the suspending of interest pending appeal is largely determined by the character of the case and the result of the appeal. In the instant case the amount allowed by the trial court was materially reduced by this court, and we feel that in view of this fact it would be equitable to allow interest only from the date of the final determination of the controversy by this court. It follows that plaintiff's request that interest be allowed from any date prior to the final determination of this case by this court should be and is denied.

Plaintiff in his petition for rehearing for the first time calls attention to the fact that a supersedeas bond was filed in this case, and asks this court to amend or modify its opinion by rendering judgment in this court against the defendants and the bondsmen on the supersedeas bond. We agree that this is proper.

The former opinion in this cause is modified and corrected by inserting therein in lieu of the last two paragraphs the following:

"The judgment of the trial court is modified by adding to the admitted profit of $154,948.90, the sum of $42,277.56, resulting in a total adjudicated profit of $197,226.46, leaving a balance due plaintiff, after deducting from the last stated amount the sum of $93,467.35 accruing to the defendants under the contract, the sum of $103,759.11. Judgment for the said amount of $103,759.11 is hereby rendered in favor of plaintiff and against defendants, said judgment to be entered in the records of the trial court and collected in the same manner as if said judgment had been rendered therein, with interest at the rate of 6 per cent per annum from the date mandate herein is received by the clerk of the district court.

"It is further ordered, adjudged and decreed that the defendant in error, L. E. Whitham, have and recover from United States Fidelity & Guaranty Company of Baltimore, Maryland, surety on the supersedeas bond filed by plaintiff in error, the said sum of $103,759.11, said judgment to be entered in the records of the trial court and collected in the same manner as if said judgment had been rendered therein, with interest at the rate of 6 per cent per annum from such date of entry.

"The cause is remanded to the trial court, with directions to vacate the judgment heretofore rendered in the trial court, and to enter judgment and proceed thereon as above set out."

HURST, C. J., DAVISON. V. C. J., and RILEY, BAYLESS, WELCH, CORN, ARNOLD, and LUTTRELL, JJ., concur.