**J. A. TOBIN CONSTRUCTION CO.,**
Plaintiff in Error,

v.

**GRANDVIEW BANK, Defendant in Error.**
No. 40967.

Supreme Court of Oklahoma.

Dec. 27, 1966.

Rehearing Denied Feb. 14, 1967.

Tucker & May, McAlester, F. Philip Kirwin, Patrick E. Hartigan, Margolin & Kirwin, Kansas City, Mo., for plaintiff in error.

Arnote, Bratton & Allford, McAlester, Achtenberg, Sandler & Balkin, Kansas City, Mo., for defendant in error.

HALLEY, Chief Justice.

This action was commenced in the District Court of Pittsburg County, Oklahoma,

by Grandview Bank, plaintiff below, against the J. A. Tobin Construction Co., defendant below, wherein plaintiff sought to replevy a piece of construction equipment described as a D–8 Cat Dozer, Serial #15A–2259. We will refer to the parties herein in accordance with their trial court designations. From a judgment in favor of the plaintiff, rendered by the trial court, sitting without a jury, the defendant appeals.

Because of the nature of the controversy here, it will be necessary to set out the evidence in some detail. The facts, as disclosed by the evidence, some of which was stipulated, showed that plaintiff was in the banking business in Grandview, Missouri, and that on March 2, 1959, it loaned the sum of $20,000.00 to three individuals, R. E. Peterson, William E. Burnett and John Tetyak. That these three persons signed a promissory note covering the loan, which was repayable in two equal installments of $10,000.00 each, with interest thereon at the rate of 8% per annum. The payment of this note was shown to be secured by a chattel mortgage, which covered several pieces of construction equipment, including the D–8 Cat Dozer, above mentioned. This chattel mortgage was executed only by Peterson.

Evidence was also adduced to the effect that the chattel mortgage, on its face, reflected the fact that the construction equipment listed thereon was located at 9001 Ensley Lane in Johnson County, Kansas, and at 3519 Troost, in Kansas City, Jackson County, Missouri. The chattel mortgage of the plaintiff also showed that it was subject to a prior mortgage in favor of C. I. T. Corporation. It was also shown that the plaintiff did not file its chattel mortgage of record in the State of Missouri, but did file it in Johnson County, Kansas.

The evidence showed that on March 16, 1959, R. E. Peterson sold the Cat Dozer with attachments to Tetyak Construction Company, and that on June 15, 1959, Tetyak Inc. sold the Cat Dozer, with attachments,

to the defendant. The terms of this purchase was $3,100.00 down and the assumption by defendant, of the balance due under the C. I. T. mortgage, in the sum of $13,-627.00. That at the time the defendant made this purchase the machine in question was located at Fort Leonard Wood, Missouri.

The evidence as to the physical location of the machine at the time of the execution of plaintiff's chattel mortgage was conflicting. Plaintiff's evidence, in this connection, was to the effect, that the machine was being used on a job in Johnson County, Kansas on March 2, 1959. Defendant's evidence tended to show that as of March 2 the machine was in use on a job in Missouri in Jackson County. Both plaintiff and defendant agreed that the eastern border of Johnson County, Kansas was upon the dividing line between the states of Kansas and Missouri, and that Johnson County, Kansas and Jackson County, Missouri border on each other.

Plaintiff, through the testimony of one of its officers, showed that at the time of the execution of its note and mortgage that Peterson advised it that the machine was in Kansas. This same witness testified that the plaintiff had had business dealings with Peterson since 1957. That he knew that Peterson resided in Kansas but had a business mailing address in Missouri. He further testified that the plaintiff had no knowledge that the machine had been moved to Missouri until after the payment due on the note on June 2, 1959 was allowed to become in default and of Petersons taking a voluntary petition in Bankruptcy.

Defendant offered evidence to show that the first knowledge that it had of plaintiff's chattel mortgage and its claim as to possession of the machine was on April 28, 1961, when the plaintiff made demand upon defendant for possession of the machine.

Defendant's evidence also showed that from the time it purchased the machine until it received the demand for posses-

sion, that it had expended, for maintenance and repairs, the total sum of $21,615.66.

Evidence was also offered by the plaintiff to show that the value of the Cat Dozer in March of 1959 was in the sum of $18,000 to $18,500. There was also testimony to the effect that the depreciated value of the machine, in May of 1961, without repairs and maintenance would have been $6,000, but that if it had been maintained and repaired during the ensuing time, it would have maintained the value of around $18,000.00.

From this evidence, above summarized, the trial court found for the plaintiff. In this connection, the record of the case reveals that a minute order was entered by the trial court on July 18, 1963, which is as follows:

"25,978, Grandview Bank, a corporation, vs J. A. Tobin Construction Company, a corporation, Judgment for plaintiff for the return of the property described in his petition, or in the alternative for the sum of $17,662.83, with interest as provided for in the note and mortgage. To which said defendant excepts and exceptions allowed. The defendant gives notice of his intention to appeal to the Supreme Court of the State of Oklahoma, all as per journal entry."

The record further shows that defendant's motion for a new trial was filed July 24, 1963 and overruled on October 17, 1963. Supersedeas Bond was approved and filed on November 6, 1963.

Notwithstanding the above, a Journal Entry of Judgment was filed December 16, 1963, which, omitting the formal parts, is as follows:

"The court finds that the plaintiff, Grandview Bank, a corporation, has a special ownership in by reason of a certain chattel mortgage, and is entitled to the immediate possession of the following described personal property, to-wit: One D–8 Cat Dozer, Serial No. 15A–2259, with Attachments, now in the possession of the defendant J. A. Tobin Construction Company, a corporation

which property the Court finds was of the value of $18,000.00 on April 28, 1961, at the time plaintiff demanded possession of the defendant.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the said plaintiff do have and recover from the defendant all of the personal property described above, or its value, in the sum of $18,000 together with damages for the detention thereof in the amount of $1,985.00 per month from and after April 28, 1961, but that plaintiff's recovery shall be limited by the balance due on the promissory note secured by said chattel mortgage, which principal balance is $17,662.83, with interest thereon at the rate of 8% per annum from March 2, 1963. It is further ordered and adjudged that plaintiff recover its costs expended herein, for all of which let execution lie."

The record in this case discloses that a motion to settle journal entry of Judgment was filed by the defendant on January 3, 1964. This motion was never ruled on by the trial court.

 With the record before us in this condition, we are constrained first to state that we will not consider the Journal Entry of Judgment which was filed on December 16, 1964, as being the judgment in this case. We have heretofore held that under our civil procedure there can only be one judgment in an action. See Loy v. McDowell, 85 Okl. 286, 205 P. 1089; also Moline Elevator Co. v. Loewen Real Estate and Investment Co., 57 Okl. 478, 157 P. 99.

 The order of the trial court dated July 18, 1963 was the judgment that defendant's motion for a new trial was directed toward. When this motion was overruled on October 17, 1963, supersedeas bond was approved and filed as of November 6, 1963. From the above events, we can only conclude that the judgment appealed from in this cause was the order of July 18, 1963 and the order of the trial court overruling defendant's motion for a new trial.

Defendant, for reversal, depends on several propositions. We will discuss them in the numerical order presented.

Its first proposition is bottomed on the idea that the chattel mortgage of the plaintiff is not valid, as against it, who was a bona fide purchaser for value, without notice, because the chattel mortgage was not filed in Missouri. To support this contention, defendant would have us apply a well recognized exception to the general rule of comity.

■ The general rule is to the effect that the recording of a chattel mortgage in the state where the property is located remains good and effectual after the removal of the property to another state as against purchasers from or creditors of the mortgagor or other third persons.

This general rule, however, is subject to three well recognized exceptions. The first exception arises where it is contemplated by the parties that the property will be removed and used in another state. If the chattel mortgage is not filed in the state to which the property is removed, the recording of the mortgage in the original state affords the mortgagee no protection as against purchasers from the mortgagor or other third persons. The second exception occurs where the mortgagee knows that the property will be removed to another state. Here again, if the chattel mortgage is not filed in the state to which the property is removed, the mortgagee has no protection. The third exception arises in those instances where the mortgagee does not know that the property is to be removed to another state, but after finding out that it has been so removed, fails to record its lien there or fails to foreclose its lien. See Annotation 13 A.L. R.2d beginning at page 1312.

The defendant, in effect, maintains that all of the exceptions above enumerated should apply in the instant case. It states that the following facts can lead to no other conclusion. The chattel mortgage in question shows on its face that the personal property covered therein had a dual situs.

That the evidence clearly revealed that plaintiff, because of its prior loan experience with Peterson, was well aware of the fact that he (Peterson) did construction work both in Missouri and Kansas, and that from this, plaintiff either knew or should have known that the machine in question was going to be used in Missouri. That as to the question of the location of the machine as of the date of the execution of the chattel mortgage, the evidence, although conflicting, is such that the weight thereof clearly showed that the machine was in Missouri when the chattel mortgage was executed.

Plaintiff, on the other hand, asserts that the general rule, as set out above, should apply herein. It asserts that the evidence clearly showed that the machine was in Kansas at the date of the execution of the chattel mortgage; that it had no knowledge or notice that the machine had been removed from Kansas until the payment due thereon in June became delinquent, and that it never gave its consent to the removal of the machine from Kansas.

■ After carefully considering the evidence and the arguments advanced by the parties in connection with defendant's proposition No. 1, we are of the opinion, as to that proposition, standing alone, and without taking into consideration other evidence and arguments advanced by the defendant in support of his other propositions for reversal, that plaintiff's contentions are correct. To be sure, the evidence in connection with proposition No. 1 was conflicting, as is very often the case, but even so, we are constrained to agree with plaintiff's position in connection therewith.

Defendant's second proposition is to the effect that it would be unjust and inequitable not to subrogate it to the first mortgage of C. I. T. as plaintiff would thereby be permitted to profit from its failure to file its second mortgage in Missouri.

The evidence, in connection with this proposition showed that defendant, at the time it purchased the D-8 Cat Dozer from Tetyak, Inc., paid the sum of $3,100.00 in

cash, and assumed the payment of the balance due on the note and first mortgage of C. I. T. in the amount of $13,627.97. The evidence further showed that defendant made payments to C. I. T. as required by the note and mortgage, and when the final payment was made, took from C. I. T. an assignment of its note and mortgage. This mortgage, although paid in full, was never released of record. There is no dispute as between the parties hereto that C. I. T. had the first mortgage and that plaintiff's mortgage was a second mortgage and inferior to that of C. I. T.

In support of its contention, plaintiff relies on Christy v. Scott (1888) 31 Mo. App. 331; Thesen v. Parker (Mo.App. 1925), 274 S.W. 853, and also the case of Saum v. Hine, 178 Okl. 151, 61 P.2d 1059. These cases lay down the rule that there is a presumption as a matter of law that where a first mortgage is paid off that this shall not operate as an extinguishment of the mortgage, if it is for the interest of the assignee to uphold it, and that as a result, the assignee is entitled to be subrogated to the position of the first mortgage.

Plaintiff counters the above authorities by arguing that the assignment given by C. I. T. was an afterthought and a legal nullity, as at that time C. I. T. had nothing to sell or assign to defendant, and that no consideration for such assignment was shown. Plaintiff attempts to distinguish defendant's authorities and argues that the evidence shows that there was no intention on the part of the defendant to keep the first mortgage alive.

Our research on this question indicates that there is a division of authority with respect to this issue.

One line of well considered cases is to the effect that a purchaser, who discharges, pursuant to his agreement to do so, a specific superior lien on property as a part of or in full payment of the purchase price, without actual notice of a junior lien that is recorded, is entitled to subrogation, in the absence of intervening equities to the

rights of the holder of the lien so discharged, as against the junior lien. See 113 A.L.R. at page 958 and the cases cited therein. A lien of authorities holding to a contrary view is set forth in the same annotation at page 960.

■ Although our research reveals no cases exactly in point, as to facts, after careful consideration, we are inclined to the view of concurring in the argument and authorities advanced by the defendant. We believe that the taking of the assignment from C. I .T. by the defendant and the non-release of the note and mortgage indicated an intention on the part of the defendant to keep the mortgage alive. As was stated in the case of Burgoon v. Lavezzo, 68 App.D.C. 20, 92 F.2d 726, 113 A.L.R. 944:

"If the purchasers, when they paid off these mortgages, had taken an assignment of them, instead of canceling them, they could have stood upon them as a plank with which to escape from the wreck. We think that, in the eyes of equity, their relation to junior incumbrancers is not affected by the ceremony of canceling the mortgages. By paying them, under the circumstances of this case, they became substituted to the position of the mortgagees, so far as such a substitution was necessary to protect them from the injustice of having a junior incumbrancer force them to pay for their property more than once."

It is to be noted that in the case at hand, the mortgage of C. I. T. was assigned, and was not released of record, which from a factual standpoint is stronger in favor of the position of the defendant than the Burgoon v. Lavezzo case, supra.

■ We think that it is proper to apply equitable principles to this matter, even though a replevin action is considered to be an action at law. See 77 C.J.S. Replevin § 1, at page 10; Burtrum v. Gomes, 207 Okl. 349, 249 P.2d 717. Even so, we have heretofore adhered to the rule that a replevin action, such as this, is sufficiently flexible to authorize the settlement of all

the equities arising from or growing out of the main controversy. Pettit v. Rich, Okl., 400 P.2d 156. The purpose of this rule is of course, to settle all of the controversies between the parties in a single action.

Defendant herein should be subrogated to all of the rights that C. I. T. had, as the holder of the 1st and prior mortgage, to the extent of the payments made by it under that mortgage. That is, if the machine in question is to be sold at a judicial sale, defendant is entitled first to receive the monies paid by it to C. I. T. under its assumption agreement and assignment. If other disposition is sought, defendant is entitled to receive the monies advanced by it, as aforesaid, before the second mortgage of the plaintiff is entitled to first priority.

In view of our decision herein, it is deemed unnecessary to review and pass upon the other contentions of the defendant.

We therefore reverse the judgment of the trial court and remand said cause for further proceedings in conformity with the views expressed herein.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.

DAVISON, J., concurs in result.