CHANDLER–FRATES & REITZ, a
Co-partnership of Leonard A. Reitz
and Paul Reitz, Appellee,

v.

Walter KOSTICH, d/b/a Rivair Flying
Service, Appellant.

No. 53019.

Supreme Court of Oklahoma.

June 30, 1981.

Eagleton, Eagleton & Owens, Inc. by Ben K. McGill, Tulsa, for appellee.

Eric E. Anderson, Tulsa, for appellant.

HODGES, Justice.

The issue on appeal is whether a judgment has become dormant pursuant to 12 O.S.1971 § 735[1] for failure to issue execution on it within five years of the last execution. The appellee, Chandler-Frates & Reitz, an insurance agency, paid insurance premiums on behalf of the appellant, Walter Kostich, d/b/a/ Rivair Flying Service, a fixed aircraft base operator. After Kostich failed to reimburse the agency for the premiums, on January 5, 1972, the agency obtained a $4,395.67 judgment against him, together with interest at the rate of ten percent per annum from August 1, 1968, and judgment for $194.15 with interest thereon at the rate of ten percent per annum from February 3, 1969. On January 17, 1972, the agency filed a writ of execution which was returned "no property found." Chandler-Frates attempted to collect its judgment from Kostich by conducting hearings on assets, initiating garnishment proceedings and negotiations with Kostich. The agency was successful in recovering a portion of the judgment. On October 17, 1975, Kostich filed an application to determine the amount due under the judgment. The court entered an order on August 23, 1976, in response to the application. The judgment was modified because the court found prejudgment interest had erroneously been granted at the rate of ten percent per annum[2] instead of at six per-

1. It is provided by 12 O.S.1971 § 735:

"If execution shall not be sued out within five years after the date of any judgment that now is or may hereafter be rendered, in any court of record in this State, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor: Provided that this section shall not apply to judgments against municipalities."

2. The rate of interest effective at the time judgment was entered was ten percent from the date of rendition. It was provided by 12 O.S. 1971 § 727 [which was amended by 12 O.S.

Supp.1979 § 727 to provide a ten percent rate] that:

"All judgments of courts of record shall bear interest, at the rate of ten percent (10%) per annum, from the date of rendition, provided that:

1. When a rate of interest is specified in a contract, the rate therein shall apply to the judgment debt and be specified in the journal entry of judgment; however, said rate shall not exceed the lawful rate for such obligation; or

2. When a verdict for damages by reason of personal injuries is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at the rate of six percent (6%) per annum from the date the suit was commenced to date of verdict.

cent as provided by 15 O.S.1971 § 266.[3] The court determined that it had been "without jurisdiction" to enter the judgment. The 1972 judgment was modified and reduced by $815.88.

Chandler-Frates sought to execute on the judgment on February 16, 1977. The writ of execution was returned "no property found." After attempts were made to enforce the judgment, another hearing on assets was scheduled. Kostich filed a motion to quash and plea to the jurisdiction. He asserted that the judgment was dormant and had been extinguished pursuant to 12 O.S.1971 § 735. The court denied his motion.

The determinative question is whether the 1976 order adjusting the interest rate constituted a correction of the initial Journal Entry or was it a rendition of a subsequent judgment. If the court corrected the judgment, the 1977 execution was untimely because the judgment had become dormant by operation of law. If the subsequent modification was a vacation of a void judgment and entry of a new judgment, the judgment is still viable.

I

Although the trial court found it lacked jurisdiction to assess prejudgment interest at the rate of ten percent, what it lacked, in fact, was the authority to do so. A similar situation was presented in the case of *Kubatzky v. Pittsburg Plate Glass Co.*, 119 Okl. 236, 249 P. 412, 415 (1926). In *Kubatzky*, the trial court had foreclosed a

mechanic's and materialman's lien and set the rate of post-judgment interest at ten percent.[4] Although the case was reversed on other grounds, the Court said:

"While under the pleadings the court might have rendered judgment for interest from the date the account was due, had the evidence and the law sustained such finding, the court was *without authority* to set such rate of interest above 6 percent per annum."

The record reveals that the judge imposed the exact amount claimed by the agency. The record also reflects that these payments were past due prior to the commencement of the action. The date from which and to which interest should be computed is clearly ascertainable. Under these circumstances, the liability for interest is fixed by law and is not dependent on any facts submitted to the court.[5] Where the court errs and imposes a rate of interest which exceeds the legally allowable interest rate permitted by statute, the judgment is subject to reformation to allow the proper rate of interest to be imposed without vacating the original judgment.[6] The proper assessment of interest on a final judgment, at the time judgment was entered, [unless otherwise provided by contract] bore interest at the rate of ten percent from the date of entry and at six percent from the date due, *as a matter of law.* It is not necessary to set out this in a judgment.[7] The entry of the order correcting the balance due under the judgment was merely a clerical act, and

3. The legal rate of interest prior to judgment is six percent pursuant to 15 O.S.1971 § 266:

"The legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest, and by contract the parties may agree to any rate as may be authorized by law, not in effect or hereinafter enacted."

4. The applicable statutory rate under 15 O.S. 1961, § 274 was six percent. This action was on an open account, and there was no suggestion that there was an agreement for a higher rate of interest. [See Okl.Const. art. 14 § 2]. The statute provided:

"All judgments of courts of record and justices of the peace shall bear interest from the

day on which they are rendered at the rate of six percent per annum."

5. See *Whale v. Rice*, 173 Okl. 530, 49 P.2d 737, 740 (1935); and *St. Louis E. R. & W. Ry. Co. v. Oliver*, 17 Okl. 589, 87 P. 423, 427 (1906).

6. *Stanaway v. Stanaway*, 70 Mich.App. 294, 245 N.W.2d 723, 725 (1976); *Putnam v. Otsego Mut. Fire Ins. Co.*, 45 A.D.2d 556, 360 N.Y.S.2d 331, 334 (1974); *Counts v. Dobbs*, 235 S.W. 716, 719 (Tex.Civ.App.1921).

7. *Cochran v. Cochran*, 49 Ala. 178, 269 So.2d 884 (1970); rev'd in part on other grounds 289 Ala. 615, 269 So.2d 897 (1972); on remand, 49 Ala.App. 749, 269 So.2d 905 (1972).

the dormancy statute continued to run on the original judgment.[8]

## II.

The appellant urges that the trial court erred in failing to find the judgment had become dormant, and that the interim order tolled the running of the five year period provided by 12 O.S.1971 § 735.

 In the absence of a statute to the contrary a partial payment will not prevent the running of a dormancy statute.[9] Similarly, ancillary proceedings such as hearings on assets and garnishment proceedings do not prolong the life of a judgment, in the absence of the issuance of a writ of execution to enforce the judgment within the statutory period.[10]

 Actions on judgments are frequently limited by specific statutes which proscribe any actions after the lapse of a certain number of years following the rendition of the judgment or the issuance of the last execution upon it. There was no judgment lien at common law. In granting a right which did not exist at common law, the legislature can prescribe certain conditions which must be met by all judgment creditors if dormancy is to be prevented and the lien of a judgment to be continued. There is no limitation other than that of a dormancy statute upon the effective duration of a judgment. A statute prescribing limitations in actions on judgments is a restriction on the common law right of action on a judgment,[11] and general statutes of limitation including exceptions imposed thereby have no application to either actions or judgments or the limitation period prescribed specifically for judgments.[12]

 This Court held in *State v. Sterling*, 198 Okl. 398, 179 P.2d 125, 126 (1947) that there is a clear distinction between a statute of limitations and a dormancy statute. A statute of limitation is one of repose and the holder of a right of action cannot, by any act on his part, disturb the quiescence produced by the running of the period of limitation; while a dormancy statute constitutes a condition imposed upon the holder of a judgment which adheres to, and is a part of, the judgment. Under 12 O.S.1971 § 735, the judgment becomes dormant if no execution is issued within five years of the entry of the judgment or if five years intervene from the date of the last execution issued on the judgment and the time of suing out another writ of execution on the judgment.[13]

 The provisions of 12 O.S.1971 § 735 must be strictly construed.[14] Although several attempts were made to satisfy the judgment by garnishment proceedings and asset hearings, these attempts did not comply with the statutory mandate requiring issuance of execution.[15] Because of the failure of the agency to issue execution on its judgment during the five years which intervened from the date of the last issuance of execution, the judgment became dormant on January 17, 1977.

The appellant requests that the cause be reversed and remanded to the trial court with instructions to order the appellee to return to the appellant any and all sums paid by him on the judgment since January 17, 1977. We find this is a separate cause of action which has not been litigated and is not a proper issue for consideration in this appeal.

REVERSED.

8. See *Baker v. Martin*, 538 P.2d 1048, 1051 (Okl.1975).

9. *Lewis v. Smith*, 99 Ga. 603, 27 S.E. 162 (1896).

10. *Charles Banfield & Co. v. State*, 525 P.2d 638, 640 (Okl.1974); *First Nat'l. Bank of Norton v. Harper*, 161 Kan. 536, 169 P.2d 844, 849 (1946).

11. *Susskind v. Freund*, 147 Misc. 486, 263 N.Y.S. 300 (1933).

12. *Thomas v. Murray*, 174 Okl. 36, 49 P.2d 1080, 1081 (1935).

13. *Prusa v. Hejduk*, 205 Okl. 379, 238 P.2d 304, 307 (1951).

14. *Thomas v. Murray, supra.*

15. See *Charles Banfield & Co. v. State*, 525 P.2d 638 (Okl.1974).

LAVENDER, DOOLIN and HARGRAVE, JJ., and WILSON and BOX, S.JJ., concur.

IRWIN, C. J., BARNES, V. C. J., and OPALA, J., dissent.

WILSON, S. J., sitting in place of WILLIAMS, J., excused.

BOX, S. J., sitting in place of SIMMS, J., disqualified.

OPALA, Justice, dissenting:

The court holds that a *January 5, 1972* judgment—modified, on debtor's application, by a $815.88 reduction effected on *August 23, 1976*—became unenforceable by operation of the dormancy statute, 12 O.S. 1971 § 735,[1] five years from January 17, 1972—the date initial execution was issued on the judgment's original version. I cannot join in the court's pronouncement.

## I.

This appeal is being prosecuted from the trial court's decision which denies the debtor's motion to quash an order requiring him to appear and answer as to assets and his "plea to the jurisdiction". The post-judgment action sought to be reviewed here is clearly interlocutory. Because it lacks an immediately injurious impact on his property, it is not deemed to affect a debtor's "substantial rights" within the meaning of 12 O.S.1971 § 953. The decision is hence regarded as not appealable "prior to a determination and final order in the proceeding". We so held in *Weaver v. Fourth National Bank of Tulsa,* Okl., 263 P.2d 194 [1953]. Tendered for our review in *Weaver* was a denial of the debtor's *"motion to vacate"* an order requiring him to appear and disclose assets. The order before us denies a *"motion to quash" like process.* It disposes of a procedural variant that, in the context presented, is clearly but the functional equivalent of the *Weaver* "motion to vacate". The debtor's added "plea to the jurisdiction" has *no independent* significance here since both the motion and the plea were anchored on the very same ground—the passage of five years from the issuance of the last execution in the case.

I would dismiss the appeal.

## II.

The August 23 modification, which was *debtor-generated* and did not amount to a *nunc pro tunc* amendment, must be treated in law as a *new* judgment. As such it operates to trigger another five-year time span, running from August 23, 1976, which had not expired when the order sought to be reviewed was made by the trial court.

In legal contemplation there can be but *one* judgment in every action although it is possible to have several successive appealable decisions. Multiple judgments cannot co-exist in the same cause.[2] When, as here, following its rendition a judgment is modified in amount, as distinguished from being amended *nunc pro tunc,* the later version *replaces* the earlier without the interposition of a relation-back doctrine that would make the succession retroactive.[3] Although in some instances interest may indeed be allowed to run from the date of original rendition on a judgment that is later modified in amount either on appeal or in a

1. The terms of 12 O.S.1971 § 735 provide in pertinent part: "If execution shall not be sued out within five years after the date of any judgment . . . , or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor . . ."

2. *State ex rel. Board of Affairs v. Neff,* 205 Okl. 205, 236 P.2d 681, 683 [1951]; *Stubblefield v. General Motors Acceptance Corp.,* Okl., 619 P.2d 620, 624 [1980].

3. Our law clearly distinguishes between *"modification"* and *"amendment"* of a judgment. See *Cartwright v. Atlas Chemical Industries, Inc.,* Okl., 623 P.2d 606, 610 [1981]. As commonly used in our legal parlance, a judgment is "modified" when the action of a trial or appellate court has the immediate or ultimate effect of changing the amount originally awarded. See Annotation in 4 A.L.R.3rd 1221, 1222–1223 on Date from which interest on judgment starts running, as affected by modification of amount of judgment on appeal.

§ 1031 proceeding before the trial court, the modification is nonetheless treated as a distinctly separate juristic act which draws its life and takes effect from the date of its pronouncement and not *nunc pro tunc* from the time of the original judgment.[4] If a judgment is facially unmodified but there are *duplicative* and inconsistent record memorials of its entry, the earlier memorial will be taken as effective and the later shall be treated as a nullity.[5]

With respect to a judgment *modified* in amount otherwise than by a nunc pro tunc amendment the five-year dormancy period must be deemed to commence running, not from the date of original rendition but from the date modification was effected. This rule seems especially fitting in application to a case like this in which the act of modification was debtor-generated and inured to his benefit.

### III.

In my view the § 735 five-year time limit came to be interrupted when the judgment creditor caused to be issued successive garnishments on March 15, 1972, May 13, 1974 and August 14, 1978. Post-judgment garnishment in aid of execution *does* meet all the necessary attributes of an "execution" within the meaning of § 735.[6] It should be treated as having the very same tolling effect on dormancy status. The common-law distinction between "lands, tenements, goods and chattels"—property subject to levy by execution—and choses in action—i. e. "nonleviable" assets reachable by garnishment only[7]—is no longer a viable legal concept in Oklahoma.[8] We should therefore treat post-garnishment process as being included in the definition of "execution" within the meaning of § 735. Issuance of such garnishment should interrupt the dormancy period as effectively as does a sued-out execution. I would overrule our decision in *Charles Banfield Company v. State ex rel. Fallis*, Okl., 525 P.2d 638, 640 [1974] in which garnishment was held not to constitute an "execution" in the § 735 sense.

*Banfield's* status as a legal precedent rests on a most fragile foundation. The court's opinion in that case utterly failed to consider and hence overlooked that, as a result of 1965 legislation, post-judgment garnishment in aid of execution ceased being ancillary or secondary to a prior unsuccessful attempt at a levy by execution, to become legal enforcement process with a fully independent and self-contained efficacy.[9] This metamorphosis occurred when the terms of Ch. 297, Okl.Sess.Law 1965, either *repealed* or *excised all* the then-remaining provisions in our statutory law which still required that a post-judgment garnishment in aid of execution be preceded by a sheriff's *nulla bona* return of execution.[10]

I would not disturb the trial court's denial of the debtor's motion to quash and plea to the jurisdiction.

---

**4.** *Todd v. Orr*, 44 Okl. 459, 145 P. 393 [1914]; *Mason v. Slonecker*, 92 Okl. 227, 219 P. 357, 362 [1923]; *Vilbig Const. Co. et al. v. Whitham*, 201 Okl. 86, 201 P.2d 922 [1949]; *Missouri-Kansas-Texas Railroad Co. v. Edwards*, Okl., 401 P.2d 303, 304–306 [1961].

**5.** *Aishman v. Taylor*, Okl., 516 P.2d 244, 245 [1973]; *J. A. Tobin Construction Co. v. Grandview Bank*, Okl., 424 P.2d 81, 84 [1967].

**6.** *First Nat. Bank of Cordell v. City Guaranty Bank of Hobart*, 174 Okl. 545, 51 P.2d 573, 576 [1935].

**7.** "At common law, choses in action were not subject to seizure and sale under final process of execution, and the principle still prevails except and to the extent that the same has been modified or changed by statute." *McIn-*

tosh Grocery Co. v. Newman*, 184 N.C. 370, 114 S.E. 535, 536 [1922].

**8.** The essence of the common-law distinction and the reasons for its demise are explained in *Johnson v. Dahlquist*, 130 Wash. 29, 225 P. 817, 818 [1924].

**9.** H.B. 877, Okl.Sess.Law 1965, Ch. 297, pgs. 529–534.

**10.** 12 O.S.1961 §§ 847 and 863; *London & Lancashire Indemnity Co. of America v. Courtney*, 106 F.2d 277 (10th Cir. 1939); *First Nat. Bank v. City Guaranty Bank of Hobart*, 174 Okl. 545, 51 P.2d 573 (1935); *Scott v. Waples-Painter Co.*, 74 Okl. 52, 176 P. 754 (1918).