2013 OK CIV APP 76

**Todd BOWLES and Misty Bowles, Plaintiffs/Appellees,**

v.

**Kay D. GOSS, Defendant/Appellant, and**

**Steven M. Goss, doing business as Goss Feed Company and Goss Cattle Company; Goss Feed Company, L.P.; Goss Land & Cattle Company, L.P.; KDG Company; Goss Holding Company; AGCO Corporation; Allis Chalmers Corporation; and Paul Gober, doing business as Gober Materials, Gober Post Frame Materials, Paul Gober Construction, Inc. or Gober Easley, Inc., Defendants.**

**No. 109,871.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 16, 2013.

---

JOHN F. FISCHER, Presiding Judge.

¶1 Kay D. Goss appeals a July 18, 2011 order and injunction issued by the district court in aid of execution and the order overruling his motion to reconsider the July 2011 order. Finding no error in the order overruling Goss's motion to reconsider, that order is affirmed. The July 2011 order is modified as specified herein but otherwise affirmed.

## BACKGROUND

¶2 Todd and Misty Bowles obtained a judgment against Goss and others on April 21, 2006. The Bowleses registered their judgment as a lien on Goss's property and have attempted to collect that judgment with little success. According to the Bowleses, Goss attempted to discharge the judgment by filing for protection pursuant to federal bankruptcy laws. However, the federal bankruptcy court refused to discharge the judgment finding that the judgment resulted from Goss's fraudulent acts. Pursuant to the Bowleses' request in this matter, the district court issued an order on April 15, 2011, for Goss to appear and answer as to assets. That order also prohibited Goss from transferring, encumbering or otherwise disposing of any assets not exempt by law until further order of the court. The orders that are the subject of this appeal resulted from the hearing on assets conducted by the Bowleses on May 12, 2011, pursuant to the district court's April 2011 order. The district court's ruling at the hearing was first announced from the bench then memorialized in a minute order and formalized in an order filed July 18, 2011. Within ten days, Goss filed a motion to reconsider the July 18, 2011 order. That motion was denied. Gross appeals both the denial of his motion to reconsider and the July 2011 order.

## STANDARD OF REVIEW

¶3 The initial proceeding that is the subject of this appeal was conducted pursuant to the post-judgment discovery and collection provisions of Title 12 O.S.2011 §§ 841 through 862. Such matters are supplemental proceedings in aid of execution and

Clifton D. Naifeh, Norman, Oklahoma, for Plaintiffs/Appellees.

Jack Mattingly, Jr., The Mattingly Law Firm, P.C., Seminole, Oklahoma, for Defendant/Appellant.

are equitable in nature. *Stone v. Coleman,* 1976 OK 182, ¶ 2, 557 P.2d 904; *Treadway v. Collins,* 1947 OK 98, ¶ 11, 178 P.2d 886, 889. "[T]he propriety of affording equitable relief, [pursuant to these provisions] rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case." *Mid–America Corp. v. Geismar,* 1963 OK 65, ¶ 12, 380 P.2d 85, 88.

¶ 4 Goss's challenge to the district court's statutory authority to order the post-judgment relief granted in the July 18, 2011 order, without requiring the Bowleses to post security, raises legal issues. Legal questions involving statutory interpretation are subject to *de novo* review. *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5. *De novo* review requires a non-deferential, plenary and independent review of the district court's legal rulings. *Heffron v. District Court of Oklahoma County,* 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076.

¶ 5 Further, Goss's motion to reconsider sought re-examination of the district court's July 18, 2011, order and is properly treated for appellate purposes as a motion for new trial. "A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title." *Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, ¶ 4, 681 P.2d 757, 758–59. "A trial court is vested with wide discretion on whether to grant a new trial." *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 144. "Because a trial court's discretion [in ruling on a motion for new trial] is broad its ruling will not be disturbed by the reviewing tribunal in the absence of a clear showing of a manifest error or abuse of discretion with respect to a pure, simple and unmixed material question of law." *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 7, 107 P.3d 595, 600. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (footnote omitted).

## ANALYSIS

¶ 6 During the May 2011 hearing on assets, Goss testified that he received monthly checks for (1) Social Security benefits, (2) disability payments from the Department of Veterans Affairs (VA) and (3) a fireman's benefit. He also testified that his medical needs were provided for by the VA. Goss disclosed that he had acquired mineral interests in some oil and gas properties. He also disclosed that, after the Bowleses' judgment was filed, he had taken out a "reverse mortgage" or line of credit on his homestead for a maximum amount of $104,000, of which he had used all but approximately $31,000. According to Goss, the $31,000 was available on demand, but his lender was not required to disburse any of those funds unless he made a written request for additional funds.

¶ 7 At the conclusion of the hearing, the Bowleses asked the district court to order Goss to pay them the $31,000 balance on the line of credit, to enjoin Goss from transferring the mineral interests and to order that any funds from those interests be held in trust or paid to them. The district court stated its view that all of Goss's assets were subject to the Bowleses' judgment lien but that some of those assets, including Goss's homestead, were exempt from execution. Therefore, the court denied the Bowleses' request to require Goss to borrow the remaining balance of the line of credit but did order that any funds obtained from that source be paid to the Bowleses. The district court also ordered that all money received by Goss, including lease monies and run checks from his mineral interests be paid to satisfy the Bowleses' judgment. The court continued the prohibition included in its April 2011 order for the hearing on assets against transferring or encumbering any assets. These rulings were memorialized in the district court's July 18, 2011 order.

¶ 8 Goss's motion to reconsider the July 2011 order and injunction argued three points: (1) the district court failed to order the posting of security for that injunction required by 12 O.S.2011 § 1392; (2) the or-

der that all of Goss's assets were subject to the Bowleses' judgment lien was overly broad and violated Oklahoma's homestead and exemption statutes found in 31 O.S.2011 § 1; and (3) the district court lacked authority to enjoin Goss from transferring or encumbering his assets. Attached to Goss's motion are two exhibits, a partial release of judgment signed by counsel for the Bowleses affecting several lots in Block 8 of the East Maud addition to the Town of Maud, and a blank form home equity conversion mortgage.

## I. Issues Preserved for Appeal

¶ 9 As a preliminary matter, we address the Bowleses' argument that Goss's appellate arguments are limited to those specifically raised in his motion for new trial. The Bowleses rely on 12 O.S.2011 § 991(b): "If a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted." The Supreme Court has consistently invoked this statute to restrict the appellate issues to those raised in a motion for new trial. *See, e.g., Slagell v. Slagell*, 2000 OK 5, 995 P.2d 1141; *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, 681 P.2d 757; *Federal Corp. v. Indep. Sch. Dist. No. 13, Pushmataha Co.*, 1978 OK CIV APP 55, 606 P.2d 1141 (approved for publication by the Oklahoma Supreme Court). A "motion for new trial ... acts to limit the issues reviewed on appeal to those raised by that motion." *City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.*, 2011 OK 1, ¶ 11, 250 P.3d 305, 311. The Bowleses' argument is well-grounded. And, because Goss's motion was decided by the district court without a hearing, the exception permitting a party to appeal issues not listed in a motion for new trial but actually presented to and considered by the district court is not applicable. *Horizons*, 1984 OK 24, ¶ 8, 681 P.2d at 759–60.

We will limit the issues in this appeal to those raised in Goss's motion for new trial.

## II. Goss's Security Argument

¶ 10 Goss argued in his motion for new trial that the district court's prohibition on the transfer or encumbrance of assets could not be effective until the Bowleses posted the security required by 12 O.S.2011 § 1392. Goss's "security argument" is unpersuasive. Section 1392 provides:

> Unless otherwise provided by special statute, no injunction shall operate until the party obtaining the same shall give an undertaking, with sufficient surety, to be approved by the clerk of the court granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure the party injured the damages he may sustain, including reasonable attorney's fees, if it be finally decided that the injunction ought not to have been granted.

Section 1392 appears in Chapter 24 of Title 12 and is titled "Injunction." Injunctions for the purpose of that chapter are defined in section 1381, and it is clear from section 1383 that the injunctions described in Chapter 24 are limited to those entered "before judgment." The injunction appealed by Goss was entered long after the Bowleses obtained their judgment.

## III. Goss's Homestead Argument

¶ 11 Goss asserts in his motion to reconsider that the property on which he took out the line of credit is his homestead.[1] Goss also argues that the scope of the district court's order violates Oklahoma's homestead exemption statutes: "The provisions of the order stating that 'Defendant Kay D. Goss's assets are *all* subject to the April 26, 2006 judgment ...' violates Oklahoma's exemption statutes found in Title 31 O.S. §§ 1, et seq." We find this argument unpersuasive. First, Goss points to no asset subject to the district court's injunction that he claims is exempt

---

1. Although the Bowleses appear to accept this assertion in their appellate brief, there is no evidence in this record proving Goss's homestead claim. The Bowleses also appear to concede Goss's characterization of the terms of his line of credit. "Admissions in a brief may be regarded as a supplement to the appellate record." *Tyler v. Shelter Mut. Ins. Co.*, 2008 OK 9, n. 9, 184 P.3d 496, 499 n. 9.

other than his homestead. Second, section 1 of Title 31 only exempts from "attachment or execution" a home that is the principal residence of a person.

B. Creation of Lien. A judgment to which this section applies shall be a lien on the real estate of the judgment debtor within a county only from and after a Statement of Judgment made by the judgment creditor or the judgment creditor's attorney, substantially in the form prescribed by the Administrative Director of the Courts, has been filed in the office of the county clerk in that county.

. . . .

2. A lien created pursuant to this section shall affect and attach to all real property, including the homestead, of judgment debtors whose names appear in the Statement of Judgment; however, judgment liens on a homestead are exempt from forced sale pursuant to Section 1 of Title 31 of the Oklahoma Statutes and Section 2 of Article XII of the Oklahoma Constitution.

12 O.S.2011 § 706. Goss's exemption argument fails to distinguish between property that is subject to the Bowleses' judgment lien and property subject to that lien that is exempt from execution to satisfy the judgment. Consequently, the district court's statement of the applicable law in its July 2011 order is correct; all of Goss's assets including his homestead are subject to the Bowleses' judgment lien.

¶ 12 Goss's central argument on this point concerns the district court's treatment of the $31,000 balance on the line of credit secured by Goss's residence: "Mr. Goss simply desires to enjoy the same economic stability Oklahoma's homestead exemption provides by using the equity as revenue to support himself." Goss's argument is not supported by the record. The transcript of the hearing on assets establishes that in addition to the equity in his residence Goss had several sources of monthly income to "support himself" and was provided all of his medical needs through the VA. The July Order does not require Goss to pay any of those funds to the Bowleses. The record also establishes that Goss used the majority of the $75,000

line of credit he had "drawn down" to provide cash gifts to his two grandsons and buy supplies for the building in which his grandsons maintained their race car.

¶ 13 Goss also argues that the "underlying policy and objective of the homestead exemption is defeated if equity in a homestead may be diverted to creditors." We find more compelling the Bowleses' argument that the underlying policy of the law should not permit a judgment debtor to avoid his judicial obligations by dissipating assets that are subject to their judgment lien. "The ultimate purpose of [Oklahoma's discovery and collection statutes, 12 O.S.2011 §§ 841 through 862] is to effect the application of a judgment debtor's property to a judgment." *Ramco Operating Co. v. Gassett*, 1995 OK 8, ¶ 12, 890 P.2d 941, 944. A judgment creditor "may avail itself *not only* of the district court's legal execution process, *but also* of its equitable powers to aid in collecting its judgment." *Id.* ¶ 6, 890 P.2d at 946 (Opala, J., dissenting) (footnote omitted).

¶ 14 Finally, Goss's argument lacks legal support. Oklahoma's homestead law provides a temporary but not permanent prohibition on the forced sale of a judgment debtor's principal residence to satisfy the claims of creditors. "Judgment liens pursuant to [section] 706 become enforceable only when the property to which they are attached is no longer used as homestead property." *Toma v. Toma*, 2007 OK 52, ¶ 22, 163 P.3d 540, 547. We have found only one reported decision addressing a judgment creditor's right to funds secured by a reverse mortgage line of credit. In *Cameron v. Ewing*, 424 N.J.Super. 396, 38 A.3d 611 (2012), the judgment debtor elected a reverse mortgage option to receive monthly payments from the mortgagee. The New Jersey appellate court determined that payment was a "debt" due the judgment debtor as defined by statute and subject to the State's collection statutes. Neither section 841 nor section 850 specifically mentions "debts" as property subject to satisfaction of a judgment. Nonetheless, both Oklahoma statutes provide that "any property" of the judgment debtor is subject to application to a judgment, and we find no authority for excluding

debts owed the judgment debtor from the reach of judgment creditors. However, the facts in this case are distinguishable from the New Jersey case. Goss's lender is not obligated to pay any amount until Goss makes a specific request. And, with respect to the $31,000, Goss has not done so. He may never do so and, therefore, any debt related to this amount is only contingent. Although the $31,000 is "property ... under his control" we do not construe section 850 as reaching this kind of contingent debt. To do otherwise would defeat the purpose of the homestead exemption statute and, in essence, force the sale of exempt property by requiring a judgment debtor to convert homestead equity into a non-exempt asset subject to a judgment creditor's lien. We agree with the district court that, at least so long as Goss maintains this property as his homestead, he cannot be forced to borrow money secured by that property to pay the Bowleses' judgment.

¶ 15 However, if Goss voluntarily obtains any of the $31,000, the analysis involves different considerations.

It is well established in this State that in order for the proceeds of a voluntary sale of the homestead to be exempt from garnishment for debts not within the exceptions provided in Art. 12 of the Constitution there must exist at the time of sale a good faith intent to reinvest the proceeds in another homestead, and that the reinvestment be made within a reasonable time.

*Harrell v. Bank of Wilson,* 1968 OK 120, ¶ 9, 445 P.2d 266, 268–69. It is clear from this record that Goss did not use the $75,000 from his line of credit to invest in another homestead. Whether he will do so in the future with respect to the remaining $31,000 balance is not an issue in this appeal. Goss does not claim that he needs the $31,000 to purchase a new homestead but only for a "gallon of milk" and other unspecified "everyday needs." The district court enjoined Goss from using any of the line of credit balance voluntarily withdrawn for any purpose other than satisfaction of the Bowleses' judgment. We find no abuse of discretion on the part of the district court. However, the district court's order is modified to allow Goss to request a hearing in the event he wants to try and show that the withdrawal of any of the $31,000 is in good faith and to be used for reinvestment in another homestead pursuant to *Harrell v. Bank of Wilson,* or for some other purpose permitted by law. Otherwise, the order to pay the Bowleses any of the $31,000 voluntarily withdrawn by Goss is affirmed.

## IV. Goss's Injunction Argument

¶ 16 Goss's final argument challenges the district court's authority to issue the injunction included in the July 2011 order. As previously stated, this proceeding was conducted pursuant to the asset and discovery statutes that begin with section 841 of Title 12. "At any time after judgment, any property of the judgment debtor ... unless by law expressly excluded from being reached by creditors shall be subject to the payment of such judgment, by action, or as hereinafter provided." 12 O.S.2011 § 841. In *Indian Land & Trust Co. v. Owen,* 1916 OK 1056, ¶ 16, 162 P. 818, 822, the Court stated that the predecessor to section 841 is:

but declaratory of the remedies of the parties, and the powers of the courts as they existed before, upon the well-defined principles of equity jurisprudence. These statutes provide in effect that, after an execution is returned *nulla bona,* the judgment creditor may institute an action for the discovery of any money, choses in action, equitable or legal interest, and all other property to which the defendant is entitled and for subjecting the same to the satisfaction of the judgment....

¶ 17 The initial injunction issued in this case was entered pursuant to 12 O.S. 2011 § 842(A):

At any time after a final judgment, order, or decree is filed, on application of the judgment creditor, a judge of the court in which the final judgment, order, or decree was rendered shall order the judgment debtor to appear before the judge ... to answer concerning the judgment debtor's property. The judge may, by order, enjoin the judgment debtor from alienating, concealing, or encumbering any of the judg-

ment debtor's nonexempt property pending the hearing and further order of the court. . . .

Goss did not object to the injunction contained in the district court's April 2011 order and the propriety of that injunction is not an issue in this appeal. However, Goss argues, in essence, that there is no statutory authority for enjoying the transfer or encumbrance of a judgment debtor's property after a hearing on assets. The July 2011 order was authorized by 12 O.S.2011 § 850:

> The judge after the hearing provided herein may order any property of the judgment debtor, not exempt by law, in his possession or under his control to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience.

The judge may further order the judgment debtor to pay to the judgment creditor or apply on the judgment in installments, such portion of his nonexempt income, however or wherever earned or acquired, as the court may deem proper after due regard for any payments required to be made by the judgment debtor by virtue of law or prior order of a court or under wage assignments outstanding. . . . The court may, from time to time, modify an order made under this section upon application of either party upon notice to the other. A failure or neglect to comply with an order of direction of the court, shall be punished as for contempt.

Although section 850 clearly authorizes the district court to order the sale of non-exempt assets disclosed at the hearing conducted pursuant to section 842, the fact that section 850 does not contain specific authorization for post-hearing injunctions is not dispositive.

■ ¶ 18 The district court has the inherent power to do all things "necessary to the exercise" of its enumerated powers. *Winters By and Through Winters v. City of Oklahoma City,* 1987 OK 63, ¶ 8, 740 P.2d 724, 726 (citing with approval, *Roadway Express Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)). "These [inherent] powers are implicit in the existence of a judicial system, and are a

necessary incident to the exercise of a court's jurisdiction." *Id.*

> State courts claim as "inherent in them" those powers which, though neither granted to, nor withheld from, them by the state constitution and not found in any other source of law, must nonetheless be conceded to the judiciary as a separate department of the government because their exercise is deemed absolutely essential for the performance of the court's constitutionally mandated mission.

*Id.* at n. 1 (Opala, J., concurring in part and dissenting in part). One long recognized inherent power is the power to enforce the court's judgments. "Established rule is, that so long as the judgment remains in force it is of itself conclusive of the right of the plaintiff to the thing adjudged in his favor, and gives him a right to process, mesne or final, as the case may be, to execute the judgment." *Christmas v. Russell,* 72 U.S. 290, 5 Wall. 290, 18 L.Ed. 475 (1866). From these authorities we conclude that every court, including the district court in this case, that has the jurisdiction to render a judgment has the inherent power to enforce that judgment. *Cf.,* 30 Am. Jur. 2d *Executions & Enforcement of Judgments* § 3 (2005).

■ ¶ 19 Consequently, we hold that the district court did not err in entering the injunction prohibiting the transfer or encumbrance of Goss's property after the hearing on assets conducted pursuant to section 842. That injunction is reviewed for abuse of discretion.

> The award of a permanent injunction is a matter of equitable concern. Granting or denying injunctive relief is generally within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence.

*Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, ¶ 4, 925 P.2d 546, 549 (citation omitted). *Accord Rath v. Maness,* 1970 OK 111, 470 P.2d 1011 (installment payment orders of the district court issued pursuant to 12 O.S. § 850 are reviewed for abuse of discretion). Because proceedings conducted pursuant to

sections 842 and 850 are equitable in nature, we also find persuasive the view of the California courts on this issue. " 'A court of equity will always find the means of enforcing its decrees against a delinquent defendant, and its power, in this respect, is as extensive as the exigencies of the case.' " *Koshaba v. Koshaba,* 56 Cal.App.2d 302, 132 P.2d 854, 860 (1942) (quoting *Wickersham v. Crittenden,* 93 Cal. 17, 28 P. 788, 791 (1892)).

¶ 20 A long history preceded the district court's injunction in this case. The Bowleses' judgment was predicated on fraud committed by Goss. Because of Goss's fraudulent conduct, his attempt to avoid the Bowleses' judgment by filing for bankruptcy was unsuccessful. Apparently undeterred in his efforts to defeat the Bowleses' claim, Goss voluntarily granted a mortgage on his homestead property in exchange for a line of credit totaling $104,000. Of that amount, Goss had obtained approximately $75,000, none of which he invested in a homestead and all of which would have been subject to the Bowleses' judgment lien. In essence, through the line of credit, Goss was able to convert an asset subject to the Bowleses' judgment lien but temporarily exempt from execution into non-exempt assets while avoiding having to contribute those assets to satisfy the Bowleses' judgment, $700,000 to $800,000 of which remained unpaid at the time of the April 2011 hearing on assets. We find no abuse of discretion on the part of the district court in enjoining Goss from transferring or encumbering his assets.

## CONCLUSION

¶ 21 After a hearing on assets conducted pursuant to 12 O.S.2011 § 842, the district court had statutory authority and inherent power to fashion equitable relief to enforce its judgment and to provide for the satisfaction of that judgment from the assets of the judgment debtor, Kay D. Goss, except to the extent those assets are exempt from forced sale. The district court's July 18, 2011 order, requiring Goss to pay any balance of his $31,000 line of credit to the Bowleses, is therefore modified to permit Goss the opportunity to attempt to show that any funds withdrawn would be used for investment in a new homestead. As modified, the July 18, 2011 order is affirmed. The district court's order overruling Goss's motion for new trial is also affirmed.

¶ 22 **AFFIRMED AS MODIFIED.**

BARNES, V.C.J., and WISEMAN, J., concur.