AUTOMOTIVE FINANCE CORPORATION v. ROGERS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:AUTOMOTIVE FINANCE CORPORATION v. ROGERS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 AUTOMOTIVE FINANCE CORPORATION v. ROGERS
2019 OK CIV APP 16
Case Number: 115626
Decided: 03/01/2019
Mandate Issued: 03/27/2019
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2019 OK CIV APP 16, __ P.3d __

 

AUTOMOTIVE FINANCE CORPORATION, Plaintiff/Appellee,
v.
MARSHA ANNETTE ROGERS, individually, and d/b/a AUTOMOTIVE SOLUTIONS, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE MILLIE OTEY, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

Kara Pratt, BARBER & BARTZ, Tulsa, Oklahoma, for Plaintiff/Appellee,

Keith O. McArtor, Amanda C. Mims, Tulsa, Oklahoma, for Defendant/Appellant.

Barbara G. Swinton, Judge:

¶1 In the proceeding filed by Plaintiff/Appellee Automotive Finance Corporation (Creditor) to enforce a foreign judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S. 2011 §§ 719-726 (the Act),[1] Defendant/Appellant Marsha Annette Rogers, individually and d/b/a Automotive Solutions (Debtor) appeals a court order denying her motion seeking a determination of dormancy of judgment. Based on the record and applicable law, we reverse the order.

¶2 The appellate record includes only six items. The first is a "Default Judgment Entry" dated November 6, 2006 and signed by a judge from the U. S. District Court in the Southern District of Indiana, Case No. 1:06-cv-1417-SEB-JPG. The federal court judgment finds in favor of Creditor and against Debtor[2] and grants a total award of $340,560.50 plus attorney's fee and post-judgment interest. Creditor "registered" the "authenticated" federal judgment in Oklahoma by filing it with the Court Clerk of Tulsa County on June 10, 2009, Case No. CJ-2009-4308).[3]

¶3 The second item is a "Garnishment Affidavit" filed March 18, 2010 in CJ-2009-4308. The Affidavit states that Marsha Annette Rogers lists Century Bank as the garnishee and alleges it possessed non-exempt property of Debtor.

¶4 The third item in the record, a "Notice of Bankruptcy Filing," was filed in CJ-2009-4308 on August 23, 2010. The Bankruptcy Notice states "the above-named Debtors, Glenn David Chafin and Marsha Annette Chafin, filed on August 4, 2010, a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Oklahoma, such being numbered 1-12686-M."

¶5 The fourth item is a "Notice of Renewal of Judgment" that Creditor filed on October 23, 2015. In pertinent part, the Notice of Renewal states "date of Filing with the Court Clerk: November 6, 2006[4]" and confirmed that no notice of renewal of Judgment has been previously filed with the Court Clerk.

¶6 The fifth item is a motion filed by Debtor in CJ-2009-4308 on August 11, 2016, seeking, inter alia,[5] a determination that the "foreign judgment ... out of the U.S. Dist. Court of Southern District of Indiana [filed] in this Court on June 10, 2009" is dormant and unenforceable as a matter of law. Citing 12 O.S. 2011 § 735, Debtor argued "no execution or renewal of judgment was filed in the matter until a notice of renewal of judgment was filed on October 23, 2015 more than five (5) years after the Garnishment Affidavit and Summons was filed on March 18, 2010."[6]

¶7 The sixth item, the trial court's Order filed December 1, 2016, states an assets hearing was held on November 11, 2016, at which Debtor appeared with counsel. The order further states the trial court denied Debtor's motion, finding Creditor's "judgment is still enforceable." Debtor then filed this appeal, in which no transcript of the hearing was provided because "no stenographic reporting was made."

Standard of Review

¶8 The parties do not include a standard of review in their respective brief(s). Selection of the appropriate standard of appellate review requires the correct characterization of the trial court proceedings. In re Assessment of Personal Property Taxes Against Missouri Gas Energy, Div. of Southern Union Co., for Tax Years 1998, 1999, and 2000, 2008 OK 94, ¶ 17, 234 P.3d 938, 946. This proceeding was filed pursuant to the Act, the purpose of which is enforcement or collection of foreign judgments. Taracorp, Ltd. Dailey, 2018 OK 32, ¶ 22, 419 P.3d 217, 220. Said judgments are treated the same as if they were initially issued in Oklahoma." Id.

¶9 The Act's single filing requirement of "an authenticated foreign judgment" alone suggests it is a special proceeding.[7] Support is further found in §725 of the Act, which provides "[t]he right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this act remains unimpaired." Relying, in part, on § 725, Oklahoma courts agree foreign judgments filed pursuant to the Act are not civil actions to which 12 O.S. 2011 § 95's three year statute of limitations applies. See Ford Motor Credit Co. v. Kurz, 2015 OK CIV APP 16, ¶ 5, 344 P.3d 1100; Producers Grain Corp. v. Carroll, 1976 OK CIV APP 3, ¶ 10-11, 546 P.2d 285, 287-288 ("The Act was designed as a viable alternative to the traditional method of enforcing foreign judgments by separate lawsuit in which the judgment was considered nothing more than a contract debt...[and] lacked the force of a domestic judgment, except for evidentiary purposes.")

¶10 However, the appeal in this case is not brought from an order determining compliance with the Act.[8] Rather, according to the certified court appearance docket,[9] the proceeding that is subject to this appeal was filed pursuant to Oklahoma's post-judgment discovery and collection provisions under Title 12 O.S. § 841 et seq. Bowles v. Goss, 2013 OK CIV APP 76, ¶ 3, 309 P.3d 150. Such matters are "supplemental proceedings in aid of execution and are equitable in nature." Id., (citing Stone v. Coleman, 1976 OK 182, ¶ 2, 557 P.2d 904). As here, a "proceeding to disclose assets" pursuant to § 842 is "a special proceeding in an action after judgment." Weaver v. Fourth Nat. Bank of Tulsa, 1953 OK 329, ¶ 4, 263 P.2d 194. A § 842 proceeding is commonly known as a "hearing on assets." See Bowles, ¶ 21. In a § 842 proceeding, a debtor's challenge to the enforceability of a judgment under § 735 is a legal question for the court that is reviewed de novo. Chandler-Frates & Reitz v. Kostich, 1981 OK 74, 630 P.2d 1287.[10]

ANALYSIS

Compliance with 12 O.S. § 735

¶11 Both parties cite 3M Dozer as authority for their opposing positions on the single question Debtor raises on appeal -- whether the bankruptcy code tolls Oklahoma's dormancy statute, 12 O.S. 2011 § 735, during Debtor's § 362(a) automatic stay to allow Creditor to file a notice of renewal after the judgment's expiration. Section 735 provides that a judgment "shall become unenforceable and of no effect" unless, within five years after its filing in Oklahoma, a judgment creditor has performed specific steps for renewing the judgment.

¶12 In 3M Dozer the need to address the tolling issue arose only because, prior to expiration of the judgment's five year extension that was due to expire during the debtor's bankruptcy stay, the judgment creditor had failed to comply in some respect with the statutory requirements for renewing its judgment and extending its judgment lien. Debtor in this appeal has not alleged any errors with the judgment creditor's compliance with § 735, and with no hearing transcript, it is impossible to confirm whether the issue was raised below.

¶13 An appellant's failure to raise an issue to the trial court generally prevents this court from addressing the unraised issue because "it is not the function of this court to make first-instance determinations of fact or legal questions which have been neither raised nor assessed at nisi prius." Broadway Clinic v. Liberty Mutual Ins. Co., 2006 OK 29, ¶ 26, 139 P.3d 873. Implied in the trial court's order, which expressly finds the "judgment is still enforceable," is necessarily a finding that Creditor did substantially comply with § 735's requirements to prevent its judgment from becoming unenforceable. Unlike in Broadway Clinic, the issue of statutory compliance with § 735 is the basis of the trial court's order and not a first instance question of law.

¶14 Moreover, "it is a well known general principle of appellate procedure that legal issues adjudicated on appeal are those which were raised either directly or by implication." (Emphasis added.) Hedrick v. Commissioner of Dept. Of Public Safety, 2013 OK 98, ¶ 16, 315 P.3d 989, 1002 (J. Edmondson, concurring in result). "Raising an issue either directly or indirectly... would include not only those issues actually raised by parties and adjudicated, but also those fairly comprised by the issues actually raised and the nature of the adjudication.[11] Id.

¶15 "An issue may be fairly comprised in a different issue....when a necessary part of the trial court's adjudication on a raised issue requires adjudication of a fairly comprised issue because it is within the evidentiary record before the tribunal on its decision." Id. In Creditor's proceeding to enforce a foreign judgment pursuant to the Act by means of a § 842 hearing on assets, the district court record constituted the "evidentiary record" necessary for the trial court's adjudication of the raised issue, the enforceability of the judgment, and the fairly comprised issue, Creditor's compliance with § 735. Because the unraised issue of Creditor's compliance with § 735 is fairly comprised within the issue Debtor raises on appeal and the court's ruling, the unraised legal issue is properly before this Court for review.

¶16 Our starting point, which neither party has addressed, is § 735's impact on a federal judgment registered in this state pursuant to the Act. When a judgment creditor has filed a foreign judgment that is enforceable at the time of its registration in Oklahoma, it is to be considered a "new judgment" for purposes of § 735 and "the dormancy period begins to run from the date of registration." U.S. Mortgage v. Laubach, 2003 OK 67, ¶ 13, 73 P.3d 887, 896. As previously explained, the record includes Creditor's federal judgment that was registered by filing it with the court clerk on June 10, 2009, and on that date Creditor's federal judgment became a new judgment for purposes of starting § 735's dormancy period. Thus under normal circumstances, the initial five year life of Creditor's judgment would expire five years later on June 10, 2014, unless sometime within the next five years Creditor renewed the judgment for five more years.

¶17 Creditor's appellate argument and calculations in support of the trial court's order is dependent on its judgment renewal under § 735(A)(3), which provides, "A judgment shall become unenforceable and of no effect, if, within five years from the filing.... 3. A garnishment summons is not issued by the court clerk." Claiming a garnishment summons was issued on March 18, 2010 in this proceeding, Creditor argues its judgment's five year renewal would not expire until March 18, 2015.

¶18 According to Laubach, "[i]t is uniformly the registrant (the judgment creditor) who bears the burden of proof and persuasion to show the continued efficacy of its non-Oklahoma judgment that has been registered in the state for enforcement as a domestic judgment. (Footnotes omitted; emphasis added.) Id., ¶ 15. Relevant to that burden, the Court held "[t]o show a judgment lien's present effectiveness during summary process," District Court Rule 13's use of evidentiary substitutes to eliminate disputed facts did not control, and instead, the judgment creditors "must tender documentation that meets the standards of [12 O.S.Supp. 1997] § 759." Id., ¶ 23. "That documentation must (a) bear the federal court clerk's certificate which identifies the document as a true and correct copy of the original on file in the clerk's office as well as (b) be filed in the Oklahoma County Clerk's office before the dormancy period has run on the registered federal-court judgment." Id., ¶ 24.

¶19 Reviewing "a garnishment summons" the creditors attached to their summary judgment motion and represented it was issued in the federal-court case, the Court in Laubach stated "the summons, which bears a notation that it was recorded in the Oklahoma County Clerk's office on 13 September 2002, neither reflects the date of its issuance nor bears a certificate that it is a true and correct copy of the document in the custody of the federal court clerk." Id. The Court affirmed the court's finding that the judgment lien was no longer efficacious because the creditors "failed to show that they had filed in the county clerk's office a certified copy of the garnishment summons timely issued by the federal court clerk." (Emphasis added.) Id.

¶20 Nothing in the record remotely suggests Creditor has a perfected judgment lien. Nevertheless, we can find no reason why the Laubach Court's evidentiary standard for proving the present effectiveness of a judgment lien would not apply equally to Creditor's burden here to show its judgment's present enforceability.[12] Therefore to support Creditor's claim its registered judgment's initial life was renewed for five more years or until March 18, 2015, the record must show documentation meeting the standards of § 735(A)(3), i.e, a garnishment summon issued by the court clerk on March 18, 2010.

¶21 It is Appellant's burden to present a record that demonstrates the trial court erred, and she has accomplished that task in this appeal. Our review of the meager appellate record in this special proceeding reveals the documentation required here to establish Creditor's judgment was renewed until March 18, 2015, instead of its initial life's expiration June 9, 2014, does not meet the standards of § 735.

¶22 As previously explained, the appellate record submitted to this Court includes a "Garnishment Affidavit" filed on March 18, 2010, with "Century Bank" as the garnishee.[13] As relevant here, the affiant of the March 18, 2010 Garnishment Affidavit swore that "I am not seeking a continuing garnishment."

¶23 There is no garnishment summons included in the appellate record. The certified court appearance docket included therein has two separate entries for "3/18/2010," the first of which states "Garnishment Affidavit W/Summons (Post-Judgment)." The second entry simply states "Garnishment Summons Issued Mailed by Plaintiff or Attorney." If such occurred, there is no proof in the district court record that is available to this Court.

¶24 There are several types of postjudgment garnishment, see 12 O.S.2001 § 1171, including a noncontinuing earnings garnishment pursuant to 12 O.S. 2001 § 1173. This type of garnishment is commenced by filing a garnishment affidavit. 12 O.S.2001 § 1173. Section 1173(D) mandates "the summons shall be served upon the garnishee... in the manner provided for in [§] 2004 of [Title 12] and shall be returned with proof of service within ten (10) days of its date." (Emphasis added.) Section 2004(2)(b) provides "[s]ervice by mail to a garnishee shall be accomplished by mailing a copy of the summons and notice by certified mail, return receipt requested, and at the election of the judgment creditor by restricted delivery, to the addressee."

¶25 Section 1174(C), which applies to "all cases of postjudgment garnishment," requires the court clerk to attach with the garnishment a notice about certain exemptions to which the defendant may be entitled and the need to request a hearing. Pursuant to § 1174(D), "said notification" may be accomplished by several options, including:

1. Serving a copy of the garnishee summons on the defendant or on his attorney of record in the manner provided for the service of summons; or

2. Sending the notice or a copy of the garnishee summons to the defendant or his attorney of record by registered or certified mail with return receipt requested, which receipt shall be filed in the action. (Emphasis added.)

Contrary to these statutes, the appearance docket in this proceeding has no entry for a return of service or proof of mailing with the required receipts to either the garnishee or to Debtor (or her attorney or record) and to which the garnishment summons should have been attached.[14] Therefore, other than entries on the court appearance docket, there is no proof in the appellate and district court records to establish "a garnishment summons was issued by the court clerk."

¶26 We note here that Debtor admits in her Brief in Chief that Creditor's Garnishment Affidavit w/Summons was issued March 18, 2010. Uncontroverted admissions in the brief may be accepted as material supplementing a deficient appellate record. Deffenbaugh v. Hudson, 1990 OK 37, ¶4, 791 P.2d 84, 85. Regardless, as this Court interprets the Laubach standard for a creditor's burden to prove "the continued efficacy of its non-Oklahoma judgment that has been registered in the state for enforcement as a domestic judgment": 1) entries in a court appearance docket and 2) a party's admission on appeal, would not qualify as "documentation that meets the standards of § 735" and should not be relied upon to prove compliance with its requirements. On the record before us, we conclude Creditor has not carried its burden of proof to show its compliance with § 735(A)(3).

¶27 Without record proof of a garnishment summons issued by the Court Clerk on March 18, 2010 to establish Creditor's judgment was renewed until March 18, 2015, the record before us establishes the relevant dormancy period for Creditor's registered judgment was from June 10, 2009 to June 10, 2014. Assuming, without deciding, § 735 may be tolled during Debtor's bankruptcy stay pursuant to the bankruptcy code and/or Oklahoma law, adding one year for the stay to the registered judgment's normal June 10, 2014 expiration would result in a new expiration of June 10, 2015, for which Creditor's notice of renewal of judgment filed October 23, 2015 was filed too late to prevent the judgment's dormancy.

Tolling of the judgment

¶28 Debtor argues the judgment is dormant and unenforceable because Creditor: 1) did not file a notice of renewal of the judgment during the automatic stay, and 2) neither filed a notice of renewal nor attempted to enforce its judgment for the 3.5 years between the lifting of the stay and the March 18, 2015 expiration of the judgment's five year extension. As a result, Debtor contends Creditor's notice of renewal filed October 23, 2015, was filed seven months and five days too late to prevent the judgment's dormancy.

¶29 Debtor concedes in her Reply brief that Creditor's October 23, 2015 Notice of Renewal would be timely filed "only if the entirety of the bankruptcy proceedings tolled the five year limitation." However, she argues § 735 "provides for no tolling and no exceptions" and tolling under these circumstances would be inequitable based on Creditor's total inaction for 3.5 years after the stay was lifted.

¶30 The very complex facts in 3M Dozer presented two main issues.[15] The Court first addressed the effect of § 362(a) automatic stay on the creditor's right to renew and/or enforce its judgment and judgment lien pursuant to 12 O.S. §§ 735 and 759. The creditor unsuccessfully attempted to renew its judgment by filing a notice of renewal and also to extend its judgment lien that were due to expire during the almost five year stay. Concluding all of the creditor's § 735 options were barred by the stay, except for filing a notice of renewal, the Court held filing said notice "is not a judicial proceeding" and the stay does not prevent a creditor from filing one to keep its judgment enforceable.

¶31 The parties' arguments as a whole indicate their agreement that § 108(c)(2)'s thirty day extension would not help Creditor's judgment from becoming dormant.[16] They further agree the dispositive issue is whether § 108(c)(1) tolls § 735 for the entire duration of Debtor's stay so that Creditor's notice of renewal of judgment filed October 23, 2015 was timely. Creditor cites two authorities discussed in 3M Dozer with similar material facts, e.g., expiration of creditor's judgment and/or judgment lien occurred during stays that were very long or still in effect.

¶32 However, those similarities, among others, are not present in this case: 1) Debtor's stay, which prevented Creditor from executing/enforcing its judgment, lasted approximately one year; 2) Creditor's judgment did not expire during Debtor's stay; 3) after the stay was terminated, Creditor had 3.5 years before the judgment's expiration on March 18, 2015; and 4) Creditor has no judgment lien against Debtor's real property. Creditor has not cited one case with these facts that support its position.

¶33 As we interpret 3M Dozer, § 108(c) tolls § 735's dormancy period only for Creditor's execution/enforcement or collections actions that a § 362(a) stay actually prohibits.[17] Because the Court specifically determined that filing a notice of renewal of judgment is not prohibited by the stay, it stands to reason that § 108(c)(1) would not apply to toll a notice of renewal filed outside the judgment's five year life. Therefore, we agree with Debtor that Creditor it is not entitled to application of § 108(c) to extend the filing of a § 735 notice of renewal of judgment, and thus the trial court on remand is instructed to dismiss as dormant the foreign judgment of Creditor.

REVERSED AND REMANDED WITH INSTRUCTIONS.

MITCHELL, P.J., and BELL, J., concur.

FOOTNOTES

[1] By § 720 of the Act, "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.

[2] The default judgment was granted on four separate complaints, including breach of a note and security agreement, breach of guaranty, deception and fraud, and check deception.

[3] Although the Act uses the terms "filed" or "filing" of the foreign judgment, "[t]he term 'registration' denotes those foreign judgments which are filed in accordance with the procedures of 28 U.S.C. § 1963 or the Uniform Enforcement of Foreign Judgments Act." U.S. Mortgage v. Laubach, 2003 OK 67, n. 22, 73 P.3d 887. "An out-of-district federal judgment (or sister state judgment) may be registered in Oklahoma by filing in the office of the court clerk of any county in this state a copy of the foreign judgment that has been authenticated in accordance with the applicable congressional act or state statute." (Emphasis added.) Id., n. 20 (citing § 721 of the Act). In this case, Creditor filed its foreign judgment attached to an "Exemplification Certificate" from the aforementioned federal court that satisfies "the federally-mandated procedure for judgment authentication" requirements under 28 U.S.C. § 1738. Id., n. 21.

[4] This notice of renewal, although substantially conforming with the required form, incorrectly gives the filing date of the federal default judgment in the Indiana federal court. In 3M Dozer the judgment creditor similarly filed a Notice of Renewal with the incorrect date of the original judgment.," Id., ¶ 2. Because the creditor "conceded its judgment lien would have lost its efficacy under normal circumstances," the 3M Dozer Court determined "we did not need determine" if the notice of renewal "substantially complied with [§] 735 to prevent the judgment's dormancy." Id., 2003 Ok 68, n. 5. Similarly, this Court need not decide the same about this notice of renewal because reversal in this case is based on Creditor's failure to comply with § 735 in other respects.

[5] Debtor moved to strike the court's Alias order entered June 21, 2016, which motion the trial court also expressly denied in the order on appeal. Debtor raises no error with this part of the order on appeal.

[6] The certified court appearance docket in the appellate record confirms Creditor did not file a written objection or response to Debtor's motion to strike.

[7] A special proceeding, a/k/a special statutory proceeding, differs from other civil actions in the manner of pleading, practice and procedure prescribed by law. City of Tahlequah v. Lake Region Elec., Co-op., Inc., 2002 OK 2, ¶ 6, 47 P.3d 467, 474.

[8] See e.g., Bank of America v. Dasovich, 2018 OK CIV APP 22, 415 P.3d 547 (the Act's authentication requirement for a foreign judgment is non-jurisdictional); Concannon v. Hampton, 1978 OK 117, 584 P.2d 218 (Missouri judgment was final and should be given full faith and credit; failure to question the judgment's authentication below waives appellate review of that issue on appeal).

[9] Okla. Sup. Ct. R. 1.1(d) permits this court to "review information found on Oklahoma district court appearance dockets posted on the World Wide Web, such as on www.oscn.net in order to enhance the court's ability to inquire into and protect its jurisdiction."

[10] In Weaver, the Court held an order denying the debtor's motion to vacate a § 842 order to disclose assets was not a "final order" under 12 O.S. 1951 § 953 and not appealable because it did not affect any substantial rights. The appealed order in this § 842 proceeding is similar to the order in Kostich, i.e, denied the debtor's motion to quash the order requiring the debtor to appear and answer as to assets and plea to jurisdiction on the ground that the judgment was dormant. See also American Mortgage and Investment Co. v. Fallin, 1994 OK CIV APP 33, 872 P.2d 949 (order on appeal refused to vacate an order requiring the debtor to appear for a hearing on assets and denying motion to declare judgment satisfied by operation of § 735) and Tulsair Beechcraft, Inc. v. Polin, 1991 OK CIV APP 15, 806 P.2d 1150 (trial court denied motion to vacate an order for debtor to appear and answer as to assets that also argued the judgment was dormant).

[11] See Hedrick, fn 27 and 28 to Judge Edmondson's concurring opinion for supporting authorities.

[12] Such standard is consistent with this Court's requirement that § 735 must be strictly construed. Chandler-Frates & Reitz v. Kostich, 1981 OK 74, ¶ 10, 630 P.2d 1287.

[13] The document in the record is consistent with scanned document available on www.oscn.net.

[14] Recognizing the federal court follows Oklahoma's procedure for garnishment process, the Court in Laubach, 2003 OK 67, n. 44, explained that "[t]he affidavit is the document that triggers a garnishment process. Upon the filing of garnishment affidavit, the federal court clerk issues garnishment summons. The garnishment summons is filed as an attachment to the return of service."

[15] In February 1988, the creditor obtained a judgment in Major County and perfected a judgment lien against the debtor's interest in real property located in the same county. Five years later, Creditor renewed its judgment and extended its judgment lien for five more years. In November 1996, the debtor filed for bankruptcy, which automatic stay was effective for almost five years. During the stay the creditor's extended judgment was to expire February 1998, which to prevent it timely filed a notice of renewal of judgment with the court clerk, but failed to file a certified copy of the same notice with the county clerk which would extend its judgment lien. Two years later the bankruptcy court denied the creditor's request to modify the stay for a foreclosure action. The creditor filed the foreclosure on June 21, 2001, and the bankruptcy court stayed the foreclosure. In 2002 the same court vacated its stay order and terminated the automatic stay retroactive to the filing date of the foreclosure action.

[16] We agree. The date relevant for applying §108(c)(2) is when Creditor received notice of the stay's termination, for which there is no evidence in the record and the parties dispute whether the stay was for 14 months (Debtor claims the case was closed October 5, 2011) or for 12 months (Creditor claims the stay ended when the bankruptcy court denied dischargeability on August 5, 2011). Assuming Creditor received the notice in late 2011 or even early 2012 when applying § 108(c)(2), adding 30 days to either period results in 2011 or 2012 dates and therefore cannot be the "later of" date under the facts of this case. Regardless of which of the two possible dates for the end of § 735's period, i.e., June 10, 2014 or March 18, 2015, or two possible stay periods, §108(c)(1) results in the "later of" date, e.g., 12 months added to either end date would be June 10, 2015 or March 18, 2016.

[17] The Court in 3M Dozer considered § 362(a)'s subsections that are specific to "any lien." 2003 OK 68, ¶ 10 (quoting § 362(a)(4) and (a)(5)). Although there is no judgment lien in this proceeding, Creditor was similarly prohibited during the stay by § 362(a)(2), i.e. "the enforcement, against the debtor ... of a judgment obtained before the commencement of the [bankruptcy] case," and by § 362(a)(1), "the commencement or continuance, including the issuance...of process...or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title."






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1991 OK CIV APP 15, 806 P.2d 1150, 62 OBJ 1098, Tulsair Beechcraft, Inc. v. Polin
Discussed
 1994 OK CIV APP 33, 872 P.2d 949, 65 OBJ 1283, American Mortg. and Inv. Co. v. Fallin
Discussed
 1976 OK CIV APP 3, 546 P.2d 285, PRODUCERS GRAIN CORPORATION v. CARROLL
Discussed
 2013 OK CIV APP 76, 309 P.3d 150, BOWLES v. GOSS
Discussed
 2015 OK CIV APP 16, 344 P.3d 1100, FORD MOTOR CREDIT CO. v. KURZ
Discussed
 2018 OK CIV APP 22, 415 P.3d 547, BANK OF AMERICA v. DASOVICH
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 37, 791 P.2d 84, 61 OBJ 1018, Deffenbaugh v. Hudson
Discussed
 1953 OK 329, 263 P.2d 194, WEAVER v. FOURTH NAT. BANK OF TULSA
Discussed
 2002 OK 2, 47 P.3d 467, 73 OBJ 359, CITY OF TAHLEQUAH v. LAKE REGION ELECTRIC, CO-OP, INC.
Discussed
 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITT
Discussed
 2003 OK 67, 73 P.3d 887, U.S. MORTGAGE v. LAUBACH
Discussed at Length
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2008 OK 94, 234 P.3d 938, IN THE MATTER OF THE ASSESSMENT OF PERSONAL PROPERTY TAXES
Discussed
 2013 OK 98, 315 P.3d 989, HEDRICK v. COMMISSIONER OF DEPT. OF PUBLIC SAFETY
Discussed
 1976 OK 182, 557 P.2d 904, STONE v. COLEMAN
Discussed
 1978 OK 117, 584 P.2d 218, CONCANNON v. HAMPTON
Discussed
 2018 OK 32, 419 P.3d 217, TARACORP v. DAILEY
Discussed
 1981 OK 74, 630 P.2d 1287, Chandler-Frates & Reitz v. Kostich
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 95, Limitation of Other Actions
Cited
 12 O.S. 735, Must Be Issued within Five Years or Judgment Becomes Dormant - Inapplicable to Municipalities
Discussed at Length
 12 O.S. 759, Filing and Indexing of Execution - Appraisement of Property
Cited
 12 O.S. 841, Property, Equitable Interests Subject to Execution
Cited
 12 O.S. 953, Final Order Defined
Cited
 12 O.S. 1171, Right to Garnishment
Cited
 12 O.S. 1173, Garnishee Summons
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA