DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JHELUM ENTERPRISES, LLC,** a Florida Limited Liability Company;
André Gibson, Chartered, Assignee,
Appellant,

v.

**NORMAN L. DESMARAIS, JR.,** and **OCEANSIDE AUTOMOTIVE
SERVICE AND TOWING, LLC,** a Florida Limited Liability Company,
Appellees.

No. 4D2025-0554

[March 25, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 502010CA001935XXXXMB.

André A. Gibson of André Gibson, Chartered, North Miami Beach, for appellant.

Norman L. Desmarais, Boynton Beach, pro se.

LEVINE, J.

The issue presented is one of first impression: whether a reverse mortgage line of credit, which is accessible at the homeowner's discretion, is protected under Florida's homestead exemption. Appellant, a creditor with a prior judgment who seeks to execute and garnish the appellee homeowner's reverse mortgage line of credit, says no. Appellant claims that the protection of homestead no longer protects the line of credit since it is a "liquid asset." We are of a different opinion. In our view, under the facts of this case, the unaccessed funds in the reverse mortgage line of credit retained their homestead protection. This is because whether the homeowner draws on the remaining funds is a mere contingency that has not yet occurred and may never occur. And until it occurs, the protection of homestead remains unrelenting and steadfast. As such, we affirm the trial court's refusal to order the homeowner to immediately access and distribute those funds. We affirm all other issues without further comment.

Appellant, Jhelum Enterprises, LLC ("creditor"), obtained two judgments against Oceanside Automotive Service and Towing, LLC, totaling $54,863.89. The creditor moved for supplementary proceedings and to implead third parties. In 2011, the trial court granted the motion and entered a final judgment, finding that Oceanside's sole officer, appellee Norman Desmarais ("homeowner"), fraudulently transferred Oceanside's assets to himself and his newly formed company to avoid satisfying the judgment. The final judgment held the homeowner liable to the creditor for the total amount of the creditor's judgments.

In 2018, the homeowner obtained a reverse mortgage, specifically a home equity conversion mortgage ("HECM") with a line of credit.[1] In 2022, he refinanced and obtained a new HECM. The 2022 HECM loan agreement stated the homeowner could request loan advances under a line of credit payment option in amounts, and at times, determined by the homeowner. The January 2024 annual reverse mortgage statement showed the homeowner had an available line of credit of $61,685.23.

The creditor, through its assignee, obtained writs of garnishment as to the lender, Longbridge Financial, LLC ("lender"); the servicer, Compu-Link Corp. of MI ("servicer"); and Capital One, where the homeowner had a bank account. In response to the writs of garnishment, the homeowner filed three claims for exemption based on his homestead exemption. The lender

---

[1] A reverse mortgage, generally speaking, has been explained as follows:

> A reverse mortgage is a financial instrument designed to allow older homeowners to convert their home equity into liquid assets. In the typical reverse-mortgage transaction, the borrower receives a loan—in either a lump sum, a series of periodic payments, or a line of credit—that is secured by a mortgage on his home. Unlike a traditional mortgage loan, a reverse-mortgage loan generally needn't be repaid until a specific "triggering" event occurs—usually, the borrower's death or the sale of his home. Upon the occurrence of that event, either (1) the estate will pay off the loan or (2) the lender will foreclose on the home to recover the money it lent.
>
> Reverse mortgages are ordinarily "non-recourse" loans, meaning that even if a borrower or his estate fails to repay the loan when due and the sale of the home doesn't cover the outstanding balance, the lender can't go after any of the borrower's (or his estate's) other assets.

*Estate of Jones v. Live Well Fin., Inc.*, 902 F.3d 1337, 1338-39 (11th Cir. 2018) (citations omitted).

and servicer filed an amended answer to the writs of garnishment, stating that the homeowner had notably not requested any additional funds since service of the writ of garnishment. The lender and servicer maintained they were not indebted to the homeowner because they had no pending obligation to disburse. Capital One also filed an answer, disclosing a checking account with merely $250.24 that was not located in Florida.

The creditor moved for permanent injunction or, alternatively, distribution of property held by the lender and servicer. The creditor alleged that because the homeowner previously used reverse mortgage proceeds for non-exempt general purposes, the remaining undistributed proceeds in the reverse mortgage line of credit lost their homestead exemption. The creditor further argued that the undistributed proceeds were subject to garnishment because the lender and servicer are obligated to distribute the proceeds upon request from the homeowner. The homeowner opposed the motion, arguing that the creditor could not force the distribution of undisbursed funds from the line of credit that may never be drawn.

The case proceeded to an evidentiary hearing, during which the homeowner testified that the reverse mortgage line of credit allowed him to borrow against a certain amount of equity in his home. The reverse mortgage had paid off the mortgage he previously owed on the property, and, as such, he was not making any further payments to the bank. The homeowner made four prior withdrawals from the line of credit between 2019 and 2023 for a total of $17,000. All reverse mortgage draws were deposited directly into his Capital One account. The homeowner used some of the money to make repairs to his homestead, but used the rest of the funds from the line of credit for vacations and general living expenses.

The homeowner further testified that he still had approximately $62,000 that he could draw on from the reverse mortgage line of credit. He had not made any requests to withdraw that money and had no intention of requesting it. The homeowner conceded that he might want to withdraw money in the future to fix and maintain his homestead. The homeowner confirmed that the line of credit did not distribute set monthly payments to him and that he had sole discretion whether to request a draw.

The servicer's corporate representative testified by deposition that when the homeowner makes a request to draw from his line of credit, the servicer is then obligated to make the payment. The homeowner earns interest on the line of credit. At the time of the deposition, the homeowner had an available line of credit of $63,273.77. All that is required to make a

distribution is the homeowner's request. The reverse mortgage is due and payable if the homeowner dies, if the homeowner no longer resides in the property as his principal residence, or if the homeowner fails to pay taxes and insurance. The loan is a non-recourse loan, meaning the homeowner has no personal liability for payment of the debt.

The trial court entered two final judgments. The first final judgment, which pertained to the lender and the servicer, found the line of credit was not immediately accessible to a creditor and, thus, the undistributed balance qualified for homestead protection. In the second final judgment, the trial court ordered the homeowner to distribute the $250 in the Capital One bank account to the creditor's assignee. The creditor, through its assignee, appeals both final judgments.

Whether undrawn funds in a line of credit on a reverse mortgage are protected under Florida's homestead exemption is a question of law that we review de novo. *See JBK Assocs. v. Sill Bros., Inc.*, 191 So. 3d 879, 881 (Fla. 2016) (stating that entitlement to the homestead exemption presents a pure question of law reviewed de novo); *Spector v. Spector*, 226 So. 3d 256, 258-59 (Fla. 4th DCA 2017) ("We review the court's legal conclusions regarding the application of homestead protections de novo.").

Section 77.04, Florida Statutes (2023), allows for garnishment of "tangible or intangible personal property of defendant the garnishee has in his or her possession or control . . . ." However, Florida's Constitution provides that a person's homestead is "exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon," except for the following debts: "the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty." Art. X, § 4, Fla. Const. The homestead exemption also provides temporary protection for the proceeds from a voluntary sale if the seller intends to reinvest the proceeds in another homestead within a reasonable time. *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201, 206 (Fla. 1962). The homestead "provision is to be liberally construed in favor of protecting the homestead." *JBK Assocs.*, 191 So. 3d at 881. The objecting party has the burden "to make a strong showing that the claimant is not entitled to the claimed exemption." *Id.* (citation omitted).

Here, the creditor has not made a "strong showing" that the homeowner is not entitled to the protections of the homestead exemption. Thus, we find that the trial court correctly determined that undistributed funds in the reverse mortgage line of credit are protected under Florida's

constitutional homestead exemption. Pursuant to the loan agreement, the undistributed funds are accessible only when requested by the homeowner. Consequently, the homeowner's right to the funds is contingent on whether he makes a request for the funds in the line of credit. At the time of the hearing, the homeowner had no outstanding requests to draw any funds on the line of credit, and the homeowner testified that he did not intend to make future draws.[2] Obviously, under these facts, the homeowner cannot be compelled to borrow funds from the line of credit.

Now, this result would be different if the reverse mortgage involved a designated stream of automatic payments. In that scenario, the resulting payments could be subject to garnishment. *See United States v. Capital Tax*, No. 04 CV 4138, 2011 WL 2565690, at *2 (N.D. Ill. June 29, 2011) (finding that the homestead exemption does not apply to a stream of payments under a reverse mortgage); *Cameron v. Ewing*, 38 A.3d 611, 616-17 (N.J. Super. Ct. App. Div. 2012) (holding that monthly reverse mortgage payments due to a judgment debtor were subject to execution and garnishment as debt owed to the judgment debtor). When there is a stream of automatic payments, the homeowner would not be compelled to access the reverse mortgage line of credit. Further, the stream of automatic payments, generally speaking, would be the type of liquid asset accessible to garnishment and execution.[3] But that scenario does not exist in this case.

Affording homestead protection to the undistributed funds is compatible with the goal of an HECM, which is to assist elderly homeowners in remaining in their homes. The U.S. Code states: "The purpose" of an HECM is "to meet the special needs of elderly homeowners by reducing the effect of the economic hardship . . . through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets." 12 U.S.C. § 1715z-20(a)(1). As the trial court accurately stated: "[I]f a debtor could be forced to withdraw funds in a reverse mortgage and line of credit to satisfy creditors, this will go toward defeating the purpose of a reverse mortgage to help the debtor remain[] living in that homestead property." This

---

[2] For these reasons, the undistributed funds in the reverse mortgage line of credit were also not garnishable "property" of the homeowner. *See* § 77.04, Fla. Stat. (2023) (allowing for garnishment of the defendant's property in the garnishee's possession or control).

[3] Black's Law Dictionary defines "liquid asset" by cross-reference to "current asset," which means "[a]n asset that is readily convertible into cash."

provision of federal law in general seeks to protect homesteads. This is consistent and compatible with the homestead protections of the Florida Constitution.

Although there are no Florida cases on point, we find *Bowles v. Goss*, 309 P.3d 150 (Okla. Civ. App. 2013), to be instructive. *Bowles* held that a judgment debtor could not be forced to borrow money secured by a reverse mortgage on homestead property to pay a judgment, as doing so "would defeat the purpose of the homestead exemption statute and, in essence, force the sale of exempt property by requiring a judgment debtor to convert homestead equity into a non-exempt asset subject to a judgment creditor's lien." *Id.* at 157. The court emphasized that while the debtor had $31,000 remaining on his reverse mortgage line of credit, because the lender was not obligated to pay any amount until the debtor made a specific request, any debt related to this amount was only contingent. *Id.* However, if the debtor voluntarily withdraws any of the remaining funds, he may request a hearing to show the funds are to be used for reinvestment in another homestead or for some other purpose permitted by law. *Id.*

Like in *Bowles*, here the homeowner cannot be compelled to access funds from the reverse mortgage line of credit to pay the judgment. Having the power to access funds under the line of credit is a contingent interest that cannot be executed on by a creditor.[4] There is, of course, a distinction between forcing a debtor to draw funds from a reverse mortgage line of credit, which is impermissible, and reaching funds the debtor voluntarily withdraws, which is permissible when the funds have lost their homestead protection. The trial court recognized this distinction when it found the funds in the Capital One bank account were subject to garnishment due to the proceeds losing their homestead exemption protection.

If a homeowner withdraws funds from the line of credit in the future, those funds could be subject to garnishment, depending on the intended use of the funds. The disbursement of funds from the reverse mortgage line of credit could be comparable to the funds a homeowner receives upon the sale of the homestead. *See Orange Brevard*, 137 So. 2d at 206. If a homeowner, at the time of the request to withdraw funds, intends to repair or maintain the existing homestead, or to purchase a new homestead, then, under the analysis of *Orange Brevard*, the funds could have homestead protection. However, if the funds are to be used for other non-exempt purposes, then the funds would not have homestead protection.

---

[4] This contingency would be true, in theory, even if this case involved a line of credit not associated with a homestead.

In conclusion, the trial court properly found the undistributed funds in the reverse mortgage line of credit were protected by Florida's constitutional homestead exemption. Whether the homeowner will access these funds, and for what purpose, in the future is a mere contingency. In the meantime, we afford homestead protection consistent with the Florida Constitution, as well as the federal code, to the reverse mortgage line of credit. As such, we affirm.

*Affirmed.*

CONNER and SHAW, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely-filed motion for rehearing.***